TERRITORY *v.* HERMOGOMES ALCANTARA.

No. 1054.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.
HON. C. W. ASHFORD, JUDGE.

ARGUED MARCH 19, 1918.                    DECIDED MARCH 28, 1918.

COKE, C. J., QUARLES AND KEMP, JJ.

APPEAL AND ERROR—*exceptions.*

> A general exception to the entire charge of the court given to the jury does not bring to the attention of this court any specific question of law presented to the lower court and is too general to be considered in the appellate court.

HOMICIDE—*intent.*

> In determining the criminality of the act of killing it is immaterial whether the intent was to kill the person killed, or whether the death of such person was the accidental or otherwise unintentional result of the intent to kill someone else.

SAME—*manslaughter—instructions.*

> On the trial of a person accused of committing the crime of murder, if there be no evidence upon which the jury can properly find the defendant guilty of an offense of a lesser degree than the one charged it is not error to instruct the jury that it cannot return a verdict of guilty of manslaughter or of any offense less than the one charged.

SAME—*same*—*same*.

> But in a prosecution for murder, where there is some substantial evidence, however weak and inconclusive it may appear to the trial court, that would tend to mitigate the homicide to manslaughter, it is error for the court to refuse to .instruct. the jury concerning manslaughter. Held, in this case, that such instruction should have been given.

OPINION OF THE COURT BY COKE, C.J.

The defendant was indicted by the grand jury of the circuit court of the first circuit on August 27, 1917, for the crime of murder in the first degree. The indictment charged the defendant with the killing of one Eustakuia Eljano on the 13th day of August, 1917, in the City and County of Honolulu, Territory of Hawaii. The defendant was tried before the circuit court of the first judicial circuit, Territory of Hawaii, in September 1917 and was convicted by a jury of murder in the first degree, which in this jurisdiction carries with it the death penalty. The defendant now comes to this court on exceptions.

The first exception relied upon by defendant is to the refusal of the trial court to submit to the jury, as requested by defendant, a charge upon manslaughter. The second exception of defendant is a general one to the entire charge of the court to the jury and the third exception is to the court's refusal to grant defendant's motion for a new trial, which, in effect, embodies the two exceptions first above referred to. Defendant's exception No. 2, being directed to the entire charge of the court to the jury, is too general in its terms to warrant consideration by this court. It has been repeatedly held by this court that exceptions, to be good, must be sufficiently definite and specific to direct the attention of this court to a point of law which was

specifically called to the attention of the trial court affecting the legality of its ruling, thereby giving the lower court an opportunity to correct its ruling if the same was erroneous. See *Fraga* v. *Portuguese Mutual Benefit Society,* 10 Haw. 128; *Territory* v. *Puahi,* 18 Haw. 649; *McCandless* v. *Honolulu Plantation Co.,* 19 Haw. 239; *Ripley & Davis* v. *Kapiolani Est.,* 22 Haw. 507; *Kennedy* v. *Sniffen,* 23 Haw. 115. It then remains for us to decide the one question, to wit, whether the trial court erred in refusing to give to the jury the instruction requested by the defendant covering the crime of manslaughter.

The instruction requested was as follows: "I charge you that if you believe from the evidence adduced before you, beyond all reasonable doubts, that the defendant without malice aforethought and without authority, justification or extenuation by law stabbed and killed one Eustakuia Eljano, as alleged in the indictment, then you should find the defendant guilty of manslaughter and in the degree of manslaughter as you may find and arrive at." The court refused to give this instruction as well as all other instructions requested by both the prosecution and defense and then proceeded to give its own instructions which were to the effect that under the evidence the jury should find the defendant guilty of murder either in the first or second degree or should acquit him. The court then proceeded to define the crime of murder and differentiated between murder in the first and second degree. The defendant excepted to the court's refusal to give his instruction on manslaughter, hereinabove set forth, and this exception is now properly before us for consideration.

Murder, under the statutes of this Territory, is the killing of any human being with malice aforethought,

without authority, justification or extenuation by law and is of two degrees, the first and second, which shall be found by the jury. Sec. 3862 R. L. 1915. Murder committed with deliberate premeditated malice aforethought or in the commission of or attempt to commit any crime punishable with death, or committed with extreme atrocity or cruelty, is murder in the first degree. Murder not appearing to be in the first degree is murder in the second degree. Sec. 3864 R. L. 1915. Whoever kills a human being without malice aforethought, and without authority, justification or extenuation by law, is guilty of the offense of manslaughter. Sec. 3866 R. L. 1915. When the act of killing another is proved malice aforethought shall be presumed and the burden shall rest upon the party who committed the killing to show that it did not exist, or a legal justification or extenuation therefor. Sec. 3863 R. L. 1915. Under an indictment for murder or manslaughter the jury may return a verdict of manslaughter in any degree or for assault and battery, as the facts proved will warrant. Sec. 3825 R. L. 1915.

It will thus be seen that the essential difference between murder and manslaughter is that in the former crime the killing is with malice and in the latter without malice. In other words, malice is the element which distinguishes murder from manslaughter. It is not disputed that Eustakuia Eljano was killed nor is it denied that she was killed by the defendant. A very strong case was made out by the prosecution to the effect that on the day of the killing, to wit, August 13, the defendant followed the deceased and Pedro from Honolulu to Waipahu, a distance of about twenty miles, and located them at the house of one Pastor; that Pedro was asleep inside of a room of the building and that the

deceased was standing in the doorway of the house conversing with Pastor and his wife; that defendant approached the house and without uttering a word stabbed the deceased with a dagger about twelve inches in length; that the blade of the dagger penetrated the lower lobe of the left lung; that deceased lived until the 18th of August at which time death resulted from the wound inflicted; that defendant then proceeded into the room where Pedro was asleep and stabbed him but the wound inflicted did not result fatally. The only evidence introduced by the defendant was his own testimony. He testified that on the day of the tragedy, believing that deceased had accompanied a man by the name of Pedro in an automobile from Honolulu to the village of Waipahu, he proceeded to that place by train and found the parties at Pastor's house; that arriving at the house he knocked at the door and deceased came and opened the door. Pedro was sitting in the corner of the room; that deceased refused to talk with defendant and that Pedro then approached defendant telling him that he had no business to talk with the deceased and that if he (defendant) did not leave the place Pedro would kill him; that Pedro had a knife and raised his hand ready to stab the defendant; that the defendant took a knife and while he was in the act of stabbing Pedro the deceased ran between them and received a mortal blow which was intended for Pedro. Defendant denies that he intended to stab the deceased but admits that he did intend to stab Pedro. Defendant further testified that he did not intend to do anything wrong but that he stabbed Pedro because Pedro wanted to stab him first.

The foregoing is the only evidence that is at all favorable to the defendant and is the only evidence upon

which the defendant could ask an instruction covering the crime of manslaughter. The degree of the crime, as a matter of law, is not altered by reason of the fact that the mortal blow descended upon the deceased instead of upon Pedro, at whom it was directed. Where one attempts to commit a premeditated and deliberate murder and as the result of the act kills another than his intended victim he will, in respect of the person killed, be guilty of murder in the first degree if there is a legal connection between the original purpose of the act and the unexpected result. *The King* v. *Bush*, 1 Haw. 62; *Ringer* v. *State*, 85 S. W. 410; *People* v. *Suesser*, 75 Pac. 1093; *State* v. *Bell*, 62 Atl. 147. In determining the criminality of the act of killing it is immaterial whether the intent was to kill the person killed or whether the death of such person was the accidental or otherwise unintentional result of the intent to kill someone else. *State* v. *Briggs*, 52 S. E. 218. Leaving aside for the moment the evidence of the prosecution and considering solely the effect of the testimony of the defendant, can it be said that there was no evidence which would have justified the jury in finding the defendant guilty of manslaughter? Can it be said that the jury, had the requested instruction been given, might not have found that the defendant at the time and on account of the assault about to be committed upon him was seized by sudden passion or rage or fear and that he acted without malice? Was it not clearly a question of fact for the jury to determine what was the mental condition of the defendant at the time he committed the homicide? Did not the court transcend its authority when saying, as in effect it did, that in view of the evidence the only verdict the jury could under the law properly render would be either one of guilty of murder

in the first or second degree or not guilty? Was not the attitude of the court tantamount to an instruction to the jury to disregard the evidence of the defendant? It is correct to assume that section 3825, R. L. 1915, does not authorize a jury in a criminal case to find the defendant guilty of a lesser offense than the one charged unless the evidence justifies it in so doing. The only object of that section is to enable the jury, in case the defendant is not shown to be guilty of the particular crime charged and if the evidence justifies it to do so, to find him guilty of a lesser offense, as the facts proved would warrant. In this case, had there been an entire absence of evidence upon which to rest a verdict of guilty of manslaughter, undoubtedly the refusal of the court to give the instruction requested would have been correct, but there was not an entire absence of such evidence. The prosecution cites in support of the correctness of the trial court's ruling the decision of this court in *Republic* v. *Kapea,* 11 Haw. 293. But in that case it was never denied that Dr. Smith was murdered in cold-blood. The defense relied solely upon an attempt to prove an alibi. There was nothing whatever in the record in that case upon which to base an instruction upon manslaughter. The rule is laid down in the case just cited that "On the trial of a person for the offense of murder in the first degree, *where there is no evidence upon which the jury can find the defendant guilty of an offense of a lesser degree than the one charged,* it is not error to charge the jury that if they believed the evidence of the prosecution they should find the defendant guilty of murder in the first degree or not guilty if they disbelieved the evidence." And to the same effect in *Sparf* v. *United States,* 156 U. S. 51, it is held that "On the trial of a person accused of committing the

crime of murder, *if there be no evidence upon which the jury can properly find the defendant guilty of an offense included in or less than the one charged,* it is not error to instruct them that they cannot return a verdict of guilty of manslaughter or of any offense less than the one charged." In *Stevenson* v. *United States,* 162 U. S. 313, the defendant had been found guilty of murder in the first degree in the United States circuit court for the eastern district of Texas. The deceased was a deputy United States marshal who had gone to a saloon for the purpose of arresting the defendant for threats and disturbances created by him. At least some of the evidence in this case tended to show that the defendant was drinking at a bar and that he was armed with a rifle; that the deceased went to the door of the saloon and fired in the direction of the defendant; that defendant thereupon fired killing the deceased. The defendant was convicted of murder and sentenced to be hanged. After the evidence was in the defendant requested the trial court to submit to the jury a charge upon manslaughter. Upon the refusal of the court to so instruct the jury the case went to the Supreme Court of the United States. In passing upon this matter the Supreme Court said:

"The question is whether the court erred in refusing this request. The evidence as to manslaughter need not be uncontradicted or in any way conclusive upon the question; *so long as there is some evidence upon the subject, the proper weight to be given it is for the jury to determine.* If there were any evidence which tended to show such a state of facts as might bring the crime within the grade of manslaughter, it then became a proper question for the jury to say whether it showed that the crime was manslaughter instead of murder. It is difficult to think of a case of killing by shooting, where both men were armed and both in readiness to shoot, and where both did shoot, that the question would

not arise for the jury to answer, whether the killing
was murder or manslaughter, or a pure act of self-
defense. The evidence might appear to the court to be
simply overwhelming to show that the killing was in
fact murder, and not manslaughter or an act performed
in self defense, and yet, so long as there was some evi-
dence relevant to the issue of manslaughter, the credi-
bility and force of such evidence must be for the jury,
and cannot be matter of law for the decision of the
court. * * *

"The ruling of the learned judge was to the effect
that, in this case, the killing was either murder, or else
it was done in the course of self defense, and that under
no view which could possibly be taken of the evidence
would the jury be at liberty to find the defendant guilty
of manslaughter. The court passed upon the strength,
credibility and tendency of the evidence, and decided as
a matter of law what it seems to us would generally be
regarded as a question of fact, viz., whether under all
the circumstances which the jury might, from the evi-
dence, find existed in the case, the defendant was guilty
of murder, or whether he killed the deceased, not in
self defense, but unlawfully and unjustly, although with-
out malice. The presence or absence of malice would
be the material consideration in the case, provided the
jury should reject the theory of self defense, and yet this
question of fact is, under the evidence in the case, de-
termined by the trial court as one of law and against
the defendant. * * *

"The ruling of the trial judge in effect was to say that
as matter of law there was nothing in all this evidence,
if true, which would permit the jury to find that the
plaintiff in error when he fired his rifle was so much
under the influence of sudden passion, caused by these
circumstances and by this assault upon him, as not to
have been actuated by that malice which the law defines
as a necessary ingredient in the crime of murder. Is it
perfectly plain and clear, as a conclusion of law, that
shooting at another under circumstances such as were
detailed by some of the witnesses in this case can have

no tendency. to raise within the mind of the person thus assaulted such a sudden passion of anger or terror as to deprive his subsequent act of that malice which is necessary to make it murder? If it is not to be so asserted as matter of law, then it becomes a question of fact in such case, and that question must be answered by the jury. Whether the witnesses told the truth in regard to such circumstances is not for the court to say, nor is it for the court to decide upon the weight to be given to them if proper for the consideration of the jury.

"It is objected that while the evidence above set forth was proper to be submitted to the jury upon the issue of self defense, it was not of that character to even raise an issue as to the grade of the crime, if the theory of self defense were not sustained. We do not see the force of the objection. The fact that the evidence might raise an issue as to whether any crime at all was committed is not in the least inconsistent with a claim that it also raised an issue as to whether or not the plaintiff in error was guilty of manslaughter instead of murder. It might be argued to the jury, under both aspects, as an act of self defense and also as one resulting from a sudden passion and without malice. The jury might reject the theory of self defense, as they might say the shot from the pistol of the deceased had already been fired and the plaintiff in error had not been harmed, and, therefore, firing back was unnecessary and was not an act of self defense. But why should the other issue be taken from the jury and they not be permitted to pass upon it as upon a question of fact? * * *

"A judge may be entirely satisfied from the whole evidence in the case that the person doing the killing was actuated by malice; that he was not in any such passion as to lower the grade of the crime from murder to manslaughter by reason of any absence of malice; and yet if there be any evidence fairly tending. to bear upon the issue of manslaughter, it is the province. of the jury to determine from all the evidence what the condition of mind was, and to say whether the crime was murder

or manslaughter." See also *Brown* v. *United States,* 159 U. S. 100.

In the case at bar was it not for the jury in the first place to decide upon the credibility of the evidence given by all of the witnesses, including the defendant in this case, and in passing upon this evidence was it not exclusively within the province of the jury to determine whether, if the facts were as testified to by the defendant, that under all the circumstances the defendant was actuated by malice or whether controlled by sudden passion or rage or fear, the assault which resulted in the death of the deceased was without malice? The supreme court of Michigan, speaking by Chief Justice Cooley, in setting aside a verdict of murder in a case in which the homicide was admitted and the only question was whether it was murder or manslaughter, said:

"The trial of criminal cases is by a jury of the country, and not by the courts. The jurors, and they alone, are to judge of the facts, and weigh the evidence. The law has established this tribunal because it is believed that, from its numbers, the mode of their selection, and the fact that the jurors come from all classes of society, they are better calculated to judge of motives, weigh probabilities, and take what may be called a common sense view of a set of circumstances, involving both act and intent, than any single man, however pure, wise and eminent he may be. This is the theory of the law; and as applied to criminal accusations, it is eminently wise, and favorable alike to liberty and justice. But to give it full effect the jury must be left to weigh the evidence, and to examine the alleged motives by their own tests. They cannot properly be furnished for this purpose with balances which leave them no discretion, but which, under certain circumstances, will compel them to find a malicious intent when they cannot conscientiously so believe such an intent to exist." *People* v. *Garbutt,* 17 Mich. 9, 27.

In an early English case Mr. Justice Best said: "If there was any evidence, it was my duty to leave it to the jury, who alone could judge of its weight. The rule that governs a judge as to evidence applies equally to the case offered on the part of the defendant, and that in support of the prosecution. It will hardly be contended, that if there was evidence offered on the part of the defendant, a judge would have a right to take on himself to decide on the effect of the evidence, and to withdraw it from the jury. Were a judge so to act, he might, with great justice, be charged with usurping the privileges of the jury, and making a criminal trial, not what it is by our law, a trial by jury, but a trial by the judge." *The King* v. *Burdett,* 3 B. & Ald. 717, and 4 B. & Ald. 95.

In *State* v. *Buffington,* 72 Pac. 213, the evidence of the defendant, in brief, was that the deceased, following a verbal altercation with defendant, jerked a chair from under defendant precipitating him onto the floor; the deceased stood over the defendant with the chair; defendant grabbed a revolver which happened to be within arm's reach and fired twice killing the deceased. The trial court in that case instructed the jury that they should find the defendant guilty of murder in the second degree if they found that the elements of the offense had been proven to their satisfaction, but if they did not so find then they should acquit the defendant, and refused to instruct upon the crime of manslaughter. This refusal on the part of the trial court was the basis of an appeal to the supreme court. The supreme court of Kansas, after remarking that many of the statements of the defendant were contradicted by other witnesses, concludes in the following language:

"The defendant in a criminal prosecution has the right to have the court instruct the jury in the law applicable to his contention, if supported by substantial evidence, however weak, unsatisfactory or inconclusive it may appear to the court. To refuse to so instruct the jury would

be to invade its province in the trial of a case. The question is not whether, in the mind of the court, the evidence as a whole excludes the idea that the defendant is guilty of an inferior degree of the offense charged, but whether there is any substantial evidence tending to prove an inferior degree of the offense. If there is, then the question of such degree should be submitted to, and left for the determination of, the jury. *The unsupported testimony of the defendant alone, if tending to establish such inferior degree, is sufficient to require the court to so instruct."*

And so in this case, while the testimony of the defendant may have appeared to be weak and unsatisfactory and it may have been overwhelmed by the testimony of the witnesses for the prosecution yet the defendant's testimony raised an issue of fact, to wit, whether the killing was with or without malice and this issue should have been submitted by the court to the jury under an instruction upon manslaughter. The defendant had the right to the judgment of the jury upon the facts uninfluenced by any direction from the court as to the weight of the evidence. See *Hopt* v. *Utah,* 110 U. S. 574. The fact that the jury found the defendant guilty of murder in the first degree, while under the instructions given by the court it might have found him guilty of murder in the second degree, tends to refute the likelihood that had the instruction requested been given the jury would have found any different verdict than it did. But this at best is a mere matter of conjecture and having found that the court should have given the instruction covering manslaughter it is not for us to speculate upon the effect the refusal of the court to give the instruction might have had upon the jury.

The exception is sustained and the cause is remanded to the circuit court for a new trial.

*C. S. Davis,* Second Deputy City & County Attorney

(A. M. Brown, City & County Attorney with him on the brief), for the Territory.