No. 47,500

THE STATE OF KANSAS, *Appellee*, v. MICHAEL E. BOYD, *Appellant*.

(532 P. 2d 1064)

Opinion filed March 1, 1975.

*Ray Hodge,* of Wichita, argued the cause and was on the brief for the appellant.

*Clifford L. Bertholf,* Assistant District Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, *Keith Sanborn,* District Attorney, and *Stephen M. Joseph,* Assistant District Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant-appellant, Michael E. Boyd, was tried before a jury on an information charging him with aggravated kidnapping (K. S. A. 1972 Supp. 21-3421), aggravated robbery (K. S. A. 1972 Supp. 21-3427), and first-degree murder (K. S. A. 1972 Supp. 21-3401). The defendant was found not guilty of aggravated kidnapping but was convicted of aggravated robbery and first-degree murder. Following the overruling of his posttrial motions the defendant has appealed to this court alleging trial errors.

The state's evidence was essentially as follows: At 2:34 o'clock a. m. on September 25, 1972, someone by telephone requested a

taxicab be sent to the 904 Club in Wichita. The dispatcher for Best Cab Company by radio thereupon directed Gordon T. Moore in cab 43 to proceed to the 904 Club to pick up a fare. Mr. Moore drove to the 904 Club and picked up Michael E. Boyd who was standing in the parking lot of the club. James D. Thomas testified that sometime between 2:30 and 3:00 o'clock a. m. he had a conversation with the defendant in the parking lot. According to Thomas the defendant told him that he had called a cab and that he was going to hit the driver in the head and get some money. Thomas laughed about the matter thinking that Boyd was only joking. Thomas then saw a Best cab drive into the parking lot, Boyd get into the cab, and the cab drive away. Miss Bobbie Taylor testified that she was at her home at 535 Ohio Street in Wichita at about 3 o'clock a. m. She heard a man yelling outside her house. The man was saying "Please don't, please don't". She went to the window and looked out and then went and got her mother. Together they went to the front door. She saw a body lying in the street and a cab drive away. The body in the street was identified as that of Moore, the cab driver. He died from loss of blood caused by multiple stab wounds. Carolyn Littlejohn testified that she was sitting on her front porch at about 3 o'clock a. m. when she saw a Best cab being parked on the street. She saw the defendant get out of the cab. He had been driving it. She observed defendant walk from the cab to the corner and meet two men. One of these men was William S. Knox. Knox testified that the defendant walked up to him and requested Knox to drive him to the bus depot. Knox saw blood on defendant's face and clothing and one of defendant's hands was bleeding. Knox drove defendant to the bus depot where they spent several hours together drinking. At about 8:00 o'clock a. m. defendant went to his girlfriend's house where he was arrested later in the day.

In conducting its investigation the Wichita Police Department also ascertained the following facts: (1) Gordon T. Moore's billfold and a knife were found near his abandoned cab; (2) the billfold had a latent fingerprint on it which was identified as that of the defendant Michael E. Boyd; (3) Michael E. Boyd's blood type was Group O and Gordon T. Moore's blood type was Group A; (4) when defendant was arrested he had a cut on one of his hands and there were blood stains on his clothing; (5) Group O and Group A human blood was found in Gordon T Moore's cab. The blood

stains on defendant's clothing when he was arrested were from Group A human blood.

The state's medical testimony established from an autopsy performed upon Gordon T. Moore that multiple penetrating wounds were found upon the body. These wounds caused the death of Mr. Moore due to loss of blood.

The only witness called on behalf of the defendant was the defendant himself. The defendant testified in substance that on the evening of September 24, 1972, he was at the 904 Club and called a cab. He recalled seeing James D. Thomas inside the club but denied either seeing Thomas or having any conversation with him outside the club. He specifically denied that he ever made a statement to Thomas that he was going to knock a taxicab driver in the head. Defendant further testified that when he got in the taxicab it contained another passenger. The taxicab driver began talking in a racially discriminating manner. Words ensued and then they came to blows. The driver and the defendant struck each other. At that time a big flash came before the defendant and everything was blank to defendant from that time until he woke up at his girlfriend's house later that morning. The defendant testified positively that when he got into the taxicab he had no intention to kidnap or rob the taxicab driver. Defendant further stated that he had been drinking beer that evening and had been on drugs. He had never seen the knife which the state produced, had no idea where it came from, and could not remember whether he had had a knife on his person that evening. He explained the cut and blood on his hand as resulting from his cutting up a chicken at his girlfriend's house. He testified that he did not remember doing any of the acts with which he was charged. He did not make any plans or have any intention in advance to kidnap or rob Moore. He is not sure that he killed Moore but believes that he did. The defendant offered no other evidence.

On this appeal the defendant contends that the district court erred in not giving the defendant's requested jury instructions on the lesser included offenses of kidnapping, robbery, theft, voluntary manslaughter, and murder in the second degree. We have concluded that on the basis of the record before us there was nothing in the evidence to justify an instruction on the lesser offenses of kidnapping, robbery, or theft. We believe, however, that the trial court committed reversible error in failing to in-

struct the jury on the lesser offenses of murder in the second degree and voluntary manslaughter. K. S. A. 21-3107 (3) provides that in cases where the crime charged may include some lesser crime it is the duty of the trial court to instruct the jury, not only as to the crime charged, but as to all lesser crimes of which the accused might be found guilty under the information and indictment and upon the evidence adduced, even though such instructions have not been requested or have been objected to. This section is essentially a restatement of our decisional law which has been followed in past years. In *State v. Clark*, 214 Kan. 293, 521 P. 2d 298, we stated that it is the duty of a trial court to instruct the jury not only as to the crime specifically charged in the information but also with respect to such lesser offenses included therein as the evidence may justify, even though such instructions have not been requested or have even been the basis of objections. We further declared that the accused has the right to have his theory of the case presented to the jury under appropriate instructions where there is support in the evidence therefor, even though the evidence may be weak and not conclusive and the testimony of the defendant alone, if tending to show a lesser degree of crime.

Here the state's evidence presented a strong case to support its theory that the defendant killed the cab driver Moore in the course of a robbery. Nevertheless, the defendant by his testimony offered evidence which tended to show that the homicide occurred, not with premeditation or deliberation but rather spontaneously during the course of an affray. We note that in its instructions the trial court did not submit the case to the jury solely on the theory of a felony murder. Its instruction pertaining to the crime of murder in the first degree was in the alternative, permitting the jury to find the defendant guilty of first-degree murder either on the theory of a malicious, premediated killing, or on the theory of felony murder. As pointed out above the defendant categorically denied that he had made any statement in advance of his intention to kidnap or rob a taxi driver or that he had any intention whatsoever to kidnap or rob the taxi driver when he entered the cab. His testimony was that he was provoked by the insulting remarks of the cab driver, became angry, and after an exchange of blows between himself and the cab driver, a big flash occurred and that is all he remembers until later that

day. In view of the state of the record we have concluded that even though the evidence to support the defendant's theory consisted of his testimony alone, and even though it may have been weak and not particularly persuasive, it still raised a legitimate issue for the consideration of the jury as to whether the killing was done maliciously or with premeditation and deliberation. Under these circumstances it was reversible error to deny the defendant's requested instructions covering murder in the second degree and voluntary manslaughter. The failure to give the requested instructions was clearly prejudicial error and the case must be reversed on this point.

The defendant further urges that the trial court committed prejudicial error in allowing the state to introduce into evidence photographs of the body of the deceased taken at the autopsy. He contends they were repulsive, inflamatory, without probative value, and highly prejudicial to the defendant's right to a fair trial. In *State v. Randol*, 212 Kan. 461, 513 P. 2d 248, we held that when photographic evidence is used by a coroner in describing the wounds in the body and internal organs of the victim, which wounds were received as a result of a crime of violence, such evidence is relevant and admissible to establish material facts, such as the manner and cause of death. In *Randol* we cited a number of cases where this rule has been applied. We pointed out that the trial court has broad discretion to exclude such evidence if it finds that such photographic evidence is unduly repetitious and offered solely to prejudice the minds of the jurors. In the present case the state offered 14 photographs of the body of the deceased Moore taken at the autopsy. Several of the photographs show the angle at which the deceased's body was penetrated by a sharp instrument and would seem to be reasonably necessary to explain the testimony of the state's medical witness. We believe, however, that exhibit 39 was so gruesome and repulsive that the trial court abused its discretion in admitting that exhibit into evidence. In our opinion the offer of this exhibit could be but for a single purpose—to inflame the minds of the members of the jury. This court has gone a long way, perhaps too far, in countenancing the introduction of grisly, gruesome photographs. Here exhibit 39 show the body of the deceased cut open from chin to groin and laid out like a disemboweled beef in a packing plant. A flap of chest skin partially covers the deceased's face and the chest and abdominal organs of the deceased are pre-

sented in full view. In this case the cause of death of the victim was really not in dispute. The state's medical expert made it clear that death was due to internal bleeding resulting from stab wounds. Some of the photographs which were admitted could have been helpful to the jury by showing the angle of penetration of the murder instrument into the deceased's body. We fail to see the necessity, however, of the state's offering repetitious exhibits to prove the same point. In our judgment the trial court abused its discretion in admitting into evidence repetitious photographs of the deceased's body taken at the autopsy and especially exhibit 39.

As another point on this appeal the defendant complains that the limiting instruction given by the trial court covering the evidence of the defendant's prior conviction for robbery was overly broad and in violation of the standards set forth in *State v. Masqua,* 210 Kan. 419, 502 P. 2d 728, and *State v. Bly,* 215 Kan. 168, 523 P. 2d 397. The state agrees that the limiting instruction given here was overly broad since it was in the form of a "shotgun" covering all of the eight exceptions set forth in K. S. A. 60-455 but denies that it was prejudicial. We agree that it was error, for this instruction to be given in the form in which it was given. We assume that on a re-trial of this case an appropriate instruction will be given which meets the standards of the two cases cited above.

The defendant next complains that the trial court erred in denying him the right to present evidence to support a defense of insanity. The record shows that after his arraignment in October 1972, the defendant on December 11, 1972, moved the court for an order allowing him to file a written notice of his intention to rely upon the defense of insanity pursuant to K. S. A. 22-3219. At that time the defendant was at Larned State Hospital undergoing examination to determine his competency to stand trial. The motion was granted by the district administrative judge on December 29, 1972. On January 22, 1973, defendant filed a similar motion to allow him to file the statutory notice of a plea of insanity, if applicable, out of time. Thereafter the court granted the defendant's motion for a psychiatric evaluation by Dr. C. J. Kurth with respect to the defendant's sanity at the time the crimes alleged in the information were committed. Dr. Kurth filed a report of the examination with the court on February 13, 1973. On February 17 defendant entered a plea of not guilty to count one of the information having previously entered a plea of not guilty to counts two and three. De-

fendant's attorney informed the prosecutor that insanity would not be relied on as a defense. The trial commenced on the three counts of the information on March 5, 1973. It was not until March 7, 1973, three days after the trial commenced, that the defendant's attorney filed a written notice that he intended to rely on the defense of insanity. On the morning of March 12 the trial court informed defendant's counsel that he would not allow any evidence to be entered on the defense of insanity because defendant's motion was not timely filed and good cause to file late had not been shown. K. S. A. 22-3219 (1) requires a written notice of an intention to rely upon the defense of insanity to be served and filed before trial and not more than 30 days after entry of the plea of not guilty to the information or indictment. For good cause shown the court may permit notice at a later date. Here the notice of intention to rely upon the defense of insanity was not filed until the third day of the trial which clearly did not meet the requirements of 22-3219 (1). Counsel for defendant has not stated any good reason why such notice was not filed previously and such notice was wholly inadequate to enable the state to meet the defense of insanity. We cannot say the trial court abused its discretion under the circumstances in ruling that the defense of insanity could not be relied upon and in refusing a requested instruction on that defense.

The defendant urges that the trial court erred in refusing to allow Dr. C. J. Kurth to testify regarding the effect of alcohol or drugs upon the defendant's ability to formulate a specific intent at the time of the killing of Gordon T. Moore and in refusing an instruction on voluntary intoxication. The defendant testified that he had been drinking beer on the evening of the killing and was on drugs but he offered no testimony that his mind was affected by either alcohol or drugs. Since the case is to be reversed for a new trial on other grounds we will leave it to the sound discretion of the trial court on retrial to determine whether the evidence submitted at that trial would justify an expert medical opinion as to the effect of intoxication and whether an appropriate instruction on voluntary intoxication should be given.

We have considered the remaining points which have been asserted on this appeal and find them all to be without merit. The judgment of the district court is reversed and the case is remanded for a new trial on the charges of aggravated robbery and first-degree murder as contained in counts two and three of the information.

FATZER, C. J. and KAUL, J., dissenting.