STATE OF HAWAII, Plaintiff-Appellee, *v.* EDWIN K. RIVEIRA, Defendant-Appellant

NO. 6132

APRIL 25, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

*Per Curiam.* The defendant-appellant Edwin Kaiolani Riveira (hereinafter appellant) was indicted by the grand jury for the offense of robbery in the first degree in violation of the Hawaii Penal Code (H.P.C.) sec. 840(1)(b)(i), Act 9, S.L.H. 1972.[1] However, in a jury trial in the First Circuit, appellant was convicted for the offense of assault in the second degree in violation of H.P.C. sec. 711, Act 9 S.L.H. 1972[2] and sentenced to five years imprisonment to run concurrently with any other sentences outstanding. We reverse.

Near midnight between July 12 and 13, 1975, appellant and a Clarence W. Carvalho (hereinafter witness) were upon the Iolani Palace grounds and the appellant wounded the witness. Virtually all the other facts and circumstances surrounding the incident are disputed.

---

[1] Hawaii Penal Code sec. 840(1)(b)(i) has been incorporated in H.R.S. and designated therein as H.R.S. § 708-840 (1)(b)(i). Section 840(1)(b)(i) has not been amended since enactment.

§ 840 — Robbery in the first degree.

(1) A person commits the offense of robbery in the first degree if, in the course of committing theft: (b) He is armed with a dangerous instrument and:

(i) He uses force against the person of the owner or any person present with intent to overcome the owner's physical resistance or physical power of resistance; or . . . .

[2] Hawaii Penal Code sec. 711 has been incorporated into H.R.S. and designated therein as H.R.S. § 707-711. Section 711 has not been amended since enactment.

§ 711 — Assault in the second degree.

(1) A person commits the offense of assault in the second degree if:

(a) He intentionally or knowingly causes bodily injury to another person with a dangerous instrument; or

(b) He recklessly causes serious bodily injury to another person with a dangerous instrument.

According to the State's version of the incident as related at trial by the witness, the appellant approached the witness from the rear and grabbed the witness's wallet from the rear pocket as the witness walked through the Palace grounds. The witness turned and regained possession of the wallet after a brief struggle. The witness told the appellant that he was not looking for trouble, turned and walked away from the appellant in the direction in which he was originally travelling. The witness felt what seemed to be a punch to the neck and upon seeing blood streaming down his arm, reached up and felt a knife protruding from the back of his right shoulder near the base of his neck. The appellant rushed up in front of him and jeered, "come on and get it." After extracting the knife, the witness pursued the appellant who threw an object which wounded the witness's left elbow. The appellant escaped and the witness proceeded to Queen's Medical Center where he received treatment.

The appellant's account conflicts in almost every detail with the witness's. He said the witness accosted him on Hotel Street which runs in an approximately east-west direction, a terminus thereof being at the northwest corner of the Palace grounds. Appellant was walking east toward his sister-in-law's home in Waikiki when the witness grabbed his arm and directed him to walk with the witness. Appellant complied, thinking at the time that the witness was an undercover police officer. They stopped to sit on the steps of the Kana'ina Building which is located on the eastern side of the Palace grounds. The witness rubbed the appellant's leg and stated that he wanted to perform fellatio on the appellant. Although the appellant protested, he did not attempt to do anything to prevent the witness from doing so. The witness became irritated when the appellant failed to get an erection, causing appellant to become fearful. As part of an escape plan, the appellant persuaded the witness to remove his trousers. As the witness undressed, the appellant noticed a pocket knife on the ground, picked it up and ran. While running, he opened the knife and hurled it back at the pursuing witness. The witness ducked but the knife struck and penetrated his back. When this failed to stop the witness,

appellant picked up a rock and threw it at the witness. After the witness appeared to have given up the chase, the appellant continued running or walking fast toward Waikiki, fearing that the witness would overtake him. He denied ever taking or asking for the complainant-witness's wallet.

The appellant brings the instant appeal on two grounds. First, he alleges that the trial court should have granted his motion for judgment of acquittal after the close of the prosecution's case because the State failed to produce sufficient evidence to amount to a prima facie case of robbery in the first degree. Second, appellant claims that the trial court committed reversible error by refusing to give appellant's jury instruction on self defense.

I.

The appellant contends that because the State failed to produce sufficient evidence to amount to a prima facie case of robbery in the first degree, the trial court erred in denying the motion for judgment of acquittal after the close of the prosecution's case. We said in *State v. Cannon,* 56 Haw. 161, 163, 532 P.2d 391, 394 (1975):

> To deny a motion to acquit there must be sufficient evidence to support a prima facie case. The evidence must enable a reasonable mind fairly to conclude guilt beyond a reasonable doubt, giving full play to the right of the factfinder to determine credibility, weigh the evidence, and draw justifiable inferences of fact. *State v. Rocker,* 52 Haw. 336 at 345-346, 475 P.2d 684 at 690 [(1970)].

*See State v. Stuart,* 51 Haw. 656, 466 P.2d 444 (1970); *State v. Kekaualua,* 50 Haw. 130, 433 P.2d 131 (1967).

We see no error in the trial court's denial of the appellant's motion for judgment of acquittal made pursuant to Hawaii Rules of Criminal Procedure (H.R.Cr.P.) 29(a).[3]

---

[3] The H.R.Cr.P. were in effect at the time the instant case was tried on December 22 and 23, 1975. They were superseded by the Hawaii Rules of Penal Procedure (H.R.P.P.), which became effective as of January 1, 1977.

The appellant contends that this motion should have been granted because the assault alleged in the State's version of the incident was not "in the course of committing a theft." *See supra,* n. 1. He maintains that because the witness regained possession of the wallet and walked away, the subsequent stabbing was a separate offense in both the temporal and spatial senses. *See State v. Pia,* 55 Haw. 14, 514 P.2d 580 (1973). We hold that because there was sufficient evidence to enable a reasonable mind to find that the appellant intended to re-take the wallet from the witness and attempted to do so by first stabbing the witness, it could reasonably be concluded that the appellant committed robbery in the first degree. There was no second taking, however, H.P.C. sec. 840(1)(b)(i) encompasses assault by a person armed with a dangerous instrument with the intent to rob. *See Model Penal Code* § 222.1, Comments (Tent. Draft No. 11, 1960). Because the State produced sufficient evidence to enable a reasonable mind to reach the conclusion that appellant committed the offense charged, the trial court acted correctly in denying the appellant's motion for judgment of acquittal. Under this state of the record the trial court also properly denied appellant's motion for judgment of acquittal made after the close of all of the evidence.

## II.

The other error which the appellant alleges to have been committed by the trial court was its refusal to give to the jury the appellant's instruction on self defense as to the offense of assault in the second degree. The appellant requested the trial court to give to the jury an instruction reading as follows:

DEFENDANT'S REQUESTED INSTRUCTION NO. 5

The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.

The use of deadly force is justifiable if the actor believes that deadly force is necessary to protect himself against death, serious bodily injury, kidnapping, rape or forcible sodomy.

The trial court refused to give the instruction since it believed that the evidence did not warrant such an instruction.[4] Appellant argues that the error amounted to an infringement upon his right to a jury trial as protected by the sixth amendment to the United States Constitution and article I, section 11 of the Hawaii State Constitution.

We hold that the trial court committed reversible error in refusing to instruct the jury on the law of self defense. The appellant testified that he was "scared for his life" and though he acceded to the witness's demand to submit to deviant sexual intercourse, he attempted to escape. It may be inferred therefrom by a jury that the appellant reasonably believed that throwing the knife was necessary to protect himself against death, serious bodily injury[5] or forcible sodomy.

Because there was evidence before the jury on the issue of self defense, appellant "was entitled to an instruction on that issue no matter how weak, unsatisfactory or inconclusive the

---

[4] In this regard the court stated: "As far as the Court is concerned, there is no evidence whatsoever to justify instructions on self defense. Therefore, the Court will refuse to give Defendant's Instruction No. 5 over the objection of the defendant."

[5] The appellant herein testified on his own behalf at trial. He testified in response to a question by the prosecutor:

I never know the knife went hit 'em. I just went throw 'em because I was scared of him. I want to protect myself. After I went throw the knife he kept coming so I don't know if I hurt 'em, so that's why I went pick up the rock and throw the rock.

During the same cross examination, the following questions were asked and responses given:

Q. So you had run.

A. Yes.

Q. To the dirt pile. And you were scared for your life, weren't you?

A. Yes.

testimony might have appeared to the court." *State v. Santiago*, 53 Haw. 254, 271, 492 P.2d 657, 667 (1971); *State v. Irvin* , 53 Haw. 119, 121, 488 P.2d 327, 328 (1971); *State v. Chang*, 46 Haw. 22, 47, 374 P.2d 5, 18 (1962); *Territory v. Alcantara*, 24 Haw. 197, 208 (1918). Other courts have adhered to the same rationale. *State v. Boyd*, 216 Kan. 373, 532 P.2d 1064 (1975); *People v. Moya*, 182 Colo. 290, 512 P.2d 1155 (1973); *People v. Sam*, 71 Cal.2d 194, 77 Cal. Rptr. 804, 454 P.2d 700 (1969).

The rule requiring the submission of factual determinations to the jury if there is any evidence upon which the jury may act is based on the principle that credibility of witnesses and weight of the evidence are for the jury to decide. The court should not invade the jury's province of making factual determinations. *Territory v. Alcantara, supra*.

This is not to say that the trial court should have accepted the appellant's requested instructions in the instant case. The appellant's requested instruction No. 5 virtually quotes H.P.C. sec. 304(1) and (2), the statutory provision on the use of force for self-protection. The instruction, in stating that "the use of deadly force is justifiable if the actor *believes* that deadly force is necessary to protect himself . . ." (emphasis added) is misleading and incomplete. H.P.C. Section 300(1), which is the definitional provision of chapter 3 which contains sec. 304(1) and (2), says that "believes" means "reasonably believes."

We generally recognize in this jurisdiction the proposition expressed in *United States v. Kelly*, 349 F.2d 720, at 759 (2d Cir. 1965), *cert. denied* 384 U.S. 947 (1966), that "it is not the function of the trial judge to put lengthy, confusing or inaccurate requests for instructions through a winnowing or sifting process in an endeavour to select what is good and reject what is bad. If a proffered request is in any respect incorrect, the denial of such a request is not error." *See State v. Chang, supra. Accord, United States v. Fellabaum*, 408 F.2d 220 (7th Cir. 1969) *cert. denied sub nom. Pyne v. United States*, 396 U.S. 818 (1969) 396 U.S. 858 (1969); *see United States v. Leonard*, 524 F.2d 1076, 1084 (2d Cir. 1975), *cert. denied* 425 U.S. 958 (1976).

However, we believe, as the Colorado Court said in *People v. Moya, supra* 182 Colo. at 292, 512 P.2d at 1156, that "[t]he fact that a defense theory instruction may be ineptly worded, grammatically incorrect or inaccurate in some particular does not excuse the trial court from properly instructing on the theory of defense, assuming there is some evidence to support such an instruction." The trial court has a duty to, with the aid of counsel, either correct the defective instruction or to otherwise incorporate it into its own instruction. *Nora v. People*, 176 Colo. 454, 491 P.2d 62 (1971); *Zarate v. People*, 163 Colo. 205, 429 P.2d 309 (1967) (en banc).

For the reasons stated in this part, the judgment of conviction is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.

*Edmund K. U. Yee*, Deputy Public Defender, for Defendant-Appellant.

*Rick J. Eichor*, Deputy Prosecuting Attorney, for Plaintiff-Appellee.