STATE OF HAWAII, Plaintiff-Appellee, *v.* STERLING K. UNEA, Defendant-Appellant

NO. 6579

MARCH 2, 1979

RICHARDSON, C.J., OGATA, AND MENOR, JJ.,
AND RETIRED JUSTICE KOBAYASHI ASSIGNED
BY REASON OF VACANCY*

---

* Justice Kidwell, who heard oral argument in this case, retired from the court on February 28, 1979. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

 

OPINION OF THE COURT BY OGATA, J.

On May 6, 1977, defendant-appellant, Sterling K. Unea (hereinafter appellant), was sentenced by the circuit court of the third circuit to serve a prison term of ten years, having been previously found guilty by a jury of the offense of assault in the first degree in violation of HRS § 707-710 (1976).[1] He has appealed to us from this judgment and sentence. We affirm.

On the morning of December 4, 1976, at or about 1:00 A.M., the appellant was a patron of the Foxy Lady Discotheque located in the Keauhou Beach Hotel in Kailua-Kona. He was seated with his friends, Bryant Waahila and Rodney K. Willis, Sr., both of whom testified in the instant trial. Both of these witnesses testified that John King, a black male, irritated the appellant and the witnesses by yelling "one more time" at the band which was performing at the discotheque. The appellant, Waahila and Willis told King to be quiet by saying, "aw, shut up, nigger," or "shut up, pa'ele."[2] King took offense at the comment and issued a challenge to fight. It is uncertain whether the challenge was meant only for the appellant or for all persons at the table. The accounts as to the events occurring between the issuance of the challenge and the complained of altercation are also uncertain. Sometime during the sequence of events, King disappeared into the parking lot where the incident occurred.

According to Willis's version of the events, the appellant and Waahila followed King outside. Willis said he was some distance away from them at the bell captain's desk when a black male passed him saying, "eh, brother" to the three men on the sidewalk while unbuttoning his shirt. This was Charles Caldwell, the victim of the beating complained of herein.

---

[1] The first paragraph of HRS § 707-710 (1976) reads as follows:

Assault in the first degree. (1) A person commits the offense of assault in the first degree if he intentionally or knowingly causes serious bodily injury to another person.

[2] M. Pukui & S. Elbert, Hawaiian Dictionary (1975), defines *pa'ele* as 1. Negro; negroid, dark, black. . . .

While both Willis and Waahila initially stated that Caldwell ran, they both stated in subsequent testimony that Caldwell jogged or walked fast. Willis said he tried to stop Caldwell near the bell captain's desk but could not, and he followed Caldwell to where Waahila and the appellant were standing on the sidewalk. While following Caldwell, Willis said he yelled "eh, nigger," which caused the appellant and Waahila to look in Willis's direction. It is certain up to that point that the appellant did not know Caldwell was present. Before Caldwell and the appellant had any physical contact with each other, Willis grabbed or struck Caldwell from behind and spun him around, but it is uncertain from his testimony whether he hit or threw him to the ground or into appellant. Willis further testified that at this point Waahila rushed in and started punching Caldwell. Willis said he tried to prevent appellant and Waahila from striking Caldwell but could only manage one assailant at a time. Although Willis saw Waahila strike Caldwell five to nine times, he did not see appellant strike Caldwell, although he heard kicking sounds indicating appellant may have kicked Caldwell. The incident ended when Willis got both men to stop beating Caldwell. The two left for the Kona Surf Hotel when Willis advised them to leave the area.

According to Waahila's version of the incident, the appellant was facing Caldwell, who was gesturing violently, when Willis grabbed Caldwell, struck him once in the mouth, then Caldwell fell to the ground. At this point, appellant commenced kicking Caldwell and hitting his face with appellant's fists. As in Willis's version, after the beating terminated, the men departed and headed for the Kona Surf Hotel.

The last eye witness account was that of Wendell Dinson, also a patron of the Foxy Lady Discotheque on the morning in question. Just prior to this incident, he had exhausted himself dancing at the Foxy Lady Discotheque, and was resting in his friend's car which was parked in the above-mentioned parking lot. As he returned to the discotheque, he saw three men on the sidewalk outside the hotel following a black male. One of the three following the black male was Waahila, who was walking closest to the building. The one in the center asked,

"Do you want to fight?" to the black male the three were following. As the black male started to turn around, the man in the center punched the black male. The assaulted man fell and the one who punched him kicked continuously at the fallen man's head. Waahila attempted to stop the fight and the third person who was following Caldwell merely stood and did nothing. Dinson went to the discotheque to summon aid for the victim. It clearly appears from Dinson's testimony that the man who punched and kicked Caldwell was the appellant.

Charles Caldwell, the victim, has no recollection at all of the incident or of his assailants. Physicians who treated the victim, appearing as expert witnesses, testified that he had sustained a fractured skull, which had been critical at one point. He suffered loss of memory and speech ability.

Trial before a jury was had on March 28 and 29, 1977, in which appellant did not offer any testimony. At the conclusion of such trial the jury returned its verdict finding the appellant guilty of assault in the first degree.

Appellant in his briefs alleges that the trial court committed reversible error when it refused to give four of his requested self-defense instructions to the jury. Appellant's requested instructions read as follows:

#### DEFENDANT'S REQUESTED INSTRUCTION NO. 6

The use of force upon or toward another person is justifiable if the Defendant believed that such force was immediately necessary for the purpose of protecting himself against the use[s] of unlawful force by the other person.

A person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used, without retreating, surrendering possession, doing any other act which he has no legal duty to do, or abstaining from any lawful action.

### DEFENDANT'S REQUESTED INSTRUCTION NO. 9

It is lawful for a person who is being assaulted to defend himself from attack if, as a reasonable person, he has grounds for believing and does believe that bodily injury or death is about to be inflicted upon him. In doing so he may use all force and means which he believes to be reasonably necessary to prevent injury or death which appears to be imminent.

### DEFENDANT'S REQUESTED INSTRUCTION NO. 10

Actual danger is not necessary to justify self-defense. If Sterling Unea was confronted by the appearance of danger which arouses in his own mind an honest conviction and fear that he is about to suffer death or great bodily harm, and if he acts in self-defense upon such appearances and from such fear and honest convictions, his right of self-defense is the same whether such danger is real or merely apparent.

### DEFENDANT'S REQUESTED INSTRUCTION NO. 11

Even if the other person was the aggressor and the defendant was justified in using force in self-defense, he would not be entitled to use any greater force than he had reasonable grounds to believe and actually did believe to be necessary under the circumstances to avert serious bodily harm.

In determining whether the defendant used excessive force in defending himself, you may consider all the circumstances under which he acted.

The trial court refused to give these instructions because the evidence in the case did not warrant such instructions. Just before the conclusion of the proceedings on the settlement of the instructions to be given to the jury, the court had indicated that appellant's requested instructions Nos. 6, 9, 10 and 11 were refused, and remarked:

THE COURT: All right. As far as the requested

instructions for self defense, the Court finds that there's no basis in fact for a "self defense" instruction.

We held in *State v. Riveira,* 59 Haw. 148, 577 P.2d 793 (1978), that the trial court committed reversible error when it refused to instruct the jury on the law of self defense because there was evidence in the record which would justify the use of such instruction by the jury had the jury so desired to consider and apply the instruction. In that case, 59 Haw. at 153-154, 577 P.2d at 797, we said:

> Because there was *evidence* before the jury on the issue of self defense, appellant "was entitled to an instruction on that issue no matter how weak, unsatisfactory or inconclusive the testimony might have appeared to the court." (Emphasis added.)

We cited *State v. Santiago,* 53 Haw. 254, 271, 492 P.2d 657, 667 (1971); *State v. Irvin,* 53 Haw. 119, 121, 488 P.2d 327, 328 (1971); *State v. Chang,* 46 Haw. 22, 47, 374 P.2d 5, 18 (1962); and *Territory v. Alcantara,* 24 Haw. 197, 208 (1918), in support of the quoted portion of the above language. We further cited in support of this proposition *State v. Boyd,* 216 Kan. 373, 532 P.2d 1064 (1975); *People v. Moya,* 182 Colo. 290, 512 P.2d 1155 (1973); and *People v. Sam,* 71 Cal. 2d 194, 77 Cal. Rptr. 804, 454 P.2d 700 (1969).

All of the cases from this jurisdiction cited in *State v. Riveira, supra,* require evidence in the record to justify the giving of the requested defense instruction. In *Territory v. Alcantara, supra,* 24 Haw. at 208-209, we made reference to *State v. Buffington,* 66 Kan. 706, 72 P. 213 (1903), and quoted from that Kansas case:

> The defendant in a criminal prosecution has the right to have the court instruct the jury in the law applicable to his contention, if supported by substantial evidence, however weak, unsatisfactory or inconclusive it may appear to the court. To refuse to so instruct the jury would be to invade its province in the trial of a case. The question is not whether, in the mind of the court, the evidence as a whole excludes the idea that the defendant is guilty of an inferior degree of the offense charged, but whether there is any substantial evidence tending to prove an

inferior degree of the offense. If there is, then the question of such degree should be submitted to, and left for the determination of the jury. *The unsupported testimony of the defendant alone, if tending to establish such inferior degree, is sufficient to require the court to so instruct.*

Continuing, we further said in *Alcantara,* 24 Haw. at 209:

And so in this case, while the testimony of the defendant may have appeared to be weak and unsatisfactory and it may have been overwhelmed by the testimony of the witnesses for the prosecution yet the defendant's testimony raised an issue of fact, to wit, whether the killing was with or without malice and this issue should have been submitted by the court to the jury under an instruction upon manslaughter. The defendant had the right to the judgment of the jury upon the facts uninfluenced by any direction from the court as to the weight of the evidence.

*State v. Chang, supra,* is duplicitous of the above statement in the *Alcantara* case. In *State v. Irvin, supra,* 53 Haw. at 121, 488 P.2d at 328, we stated as follows:

Defendant's theory at the trial was that the killing was accidental, not that it was done in self defense. But his testimony fairly raised the issue of self defense. That being the case, he was entitled to an instruction on that issue no matter how weak, unsatisfactory, or inconclusive the testimony might have appeared to the court. *Territory v. Alcantara,* 24 Haw. 197, 208 (1918); *State v. Chang,* 46 Haw. 22, 47, 374 P.2d 5, 18 (1962). The fact that the issue raised by the testimony was not consonant with the theory of defense makes no difference.

Likewise, *State v. Santiago, supra,* simply quotes the above-quoted language from the *Irvin* case.

Further the cases cited from Kansas, Colorado and California also require that before an instruction on the defendant's theory can be submitted to the jury there must be

"evidence deserving of any consideration whatever" by the jury.[3]

In *State v. Riveira, supra,* we further stated at 59 Haw. 154, 577 P.2d 797:

> The rule requiring the submission of factual determinations to the jury if there is any evidence upon which the jury may act is based on the principle that credibility of witnesses and weight of the evidence are for the jury to decide. The court should not invade the jury's province of making factual determinations. *Territory v. Alcantara, supra.*

Therefore, we reiterate the rule we announced in *State v. Riveira, supra,* that the defendant is entitled to an instruction on self defense if there is any evidence in the record that would support the consideration by the jury of that issue. If the record in this case shows there was such evidence then we must reverse, otherwise not.

Appellant contends that there was some testimony from witness Rodney K. Willis, Sr., which may have raised the issue of self defense. In this respect, Willis testified:

> Q. Okay. After you shoved him what happened to him, the male Negro person?
>
> A. Then him and Sterling was getting into a hassle, and I grabbed Sterling.
>
> Q. Wait a minute, now. As you turned the male Negro person around, he's now facing you.
>
> A. Right.

---

[3] See: *State v. Boyd, supra,* 216 Kan. 376, 532 P.2d 1067, where the court said: "We further declared that the accused has the right to have his theory of the case presented to the jury under appropriate instructions where there is support in the evidence therefor, even though the evidence may be weak and not conclusive and the testimony of the defendant alone, if tending to show a lesser degree of crime."; *People v. Moya, supra,* 182 Colo. 292, 512 P.2d 1156, where the court said: "The fact that a defense theory instruction may be ineptly worded, grammatically incorrect, or inaccurate in some particular does not excuse the trial court from properly instructing on the theory of defense, assuming there is evidence to support such an instruction."; and *People v. Sam, supra,* 71 Cal. 2d 211, 77 Cal. Rptr. 814, 454 P.2d 710, where the court said: "A defendant is entitled to an instruction on any theory, no matter how remote or incredible, which is supported by 'any evidence deserving of any consideration whatever.'"

Q. Okay, what happened next?

A. When I shoved him, I shoved him into Sterling.

Q. You shoved the male Negro person into Sterling.

A. Right.

Q. Okay. What did Sterling do then?

A. Well, I guess he thought maybe the guy was trying to attack him so he just defending himself.

Q. What did Sterling do then?

A. Well, they was kinda dark and they both was swinging and everything.

Appellant's theory that he was defending himself from Caldwell, the victim, is based on the testimony by Willis that "Well, I guess he thought maybe the guy was trying to attack him so he just defending himself." In our opinion, we believe that such testimony was incompetent since it was based upon Willis's guesswork and also upon his attempt to convey what was in the mind of appellant. There is no foundation in the record for this testimony.

Moreover, on re-direct examination, Willis nullified his own testimony that appellant was defending himself from Caldwell. Willis testified on re-direct examination that appellant was defending himself from John King.

The only basis on which appellant may be able to claim self defense is upon Willis's testimony that he shoved Caldwell against appellant. But such testimony by itself would not serve as evidence that appellant was defending himself from Caldwell. There is no testimony in the record that appellant reacted in self defense against Caldwell when he was shoved as testified by this witness. *Cf. State v. Montague*, 10 Wash. App. 911, 521 P.2d 64 (1974).

We conclude that there was no evidence in the record in the instant case which the jury could have considered in connection with the proffered instructions on self defense. *Williams v. State*, 91 Nev. 533, 539 P.2d 461 (1975); *Gautney v. State*, 284 Ala. 82, 222 So.2d 175 (1969); *State v. Currie*, 74 Wash. 2d 197, 443 P.2d 808 (1968); *Cameron v. State*, 123 Ga. App. 284, 180 S.E.2d 555 (1971). Consequently, the lower court did not err in refusing to give to the jury these instructions which were requested by appellant.

Affirmed.

*Steven K. Miyasaka,* Deputy Public Defender, for Defendant-Appellant.

*Jon R. Ono,* Prosecuting Attorney, County of Hawaii, for Plaintiff-Appellee.