STATE OF HAWAII, Plaintiff-Appellee, *v.* MOISES J. CASIPE, Defendant-Appellant, and VALENTIN B. DORIA and PACITO CABIE PACARIEM, Defendants

NO. 7752

(CRIMINAL NO. 53047)

JUNE 19, 1984

BURNS, C. J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Defendant Moises Casipe (Defendant) appeals from his conviction of manslaughter, Hawaii Revised Statutes (HRS) § 707-702 (1976).[1] Defendant presents three issues on appeal: (1) whether the

---

[1] HRS § 707-702 provides:
*Manslaughter.* (1) A person commits the offense of manslaughter if:
    (a) He recklessly causes the death of another person; or

trial court erred in denying Defendant's motions for mistrial on the grounds that the court-appointed interpreter ineffectively translated Defendant's testimony and failed to diligently translate to Defendant the testimony of other witnesses who testified at the trial; (2) whether Defendant was deprived of effective assistance of counsel when his court-appointed attorney failed to request a jury instruction on self-defense; and (3) whether the court erred in not giving the jury, *sua sponte*, a self-defense instruction. We answer no to all these questions and affirm.

On June 19, 1979, Defendant, Pacito Pacariem (Pacariem), and Valentin Doria (Doria) were indicted for the murder of Worthington Miner (Miner).[2] Jury trial commenced on December 3, 1979. During the trial, three Filipino interpreters were present: Mr. Nunelon Medallon, Filipino interpreter for the State courts; Mr. Martin Luna; and Mr. Frank Rulona (Rulona), who had been appointed by the court on July 2, 1979 to interpret the proceedings for Defendant into the Hilongo dialect, which Defendant spoke. On December 7, the jury found both defendants guilty of manslaughter. The defendants filed separate appeals. On July 7, 1981, this court affirmed Pacariem's conviction. *State v. Pacariem,* 2 Haw. App. 277, 630 P.2d 650 (1981).

I.

At the trial, Janlyn Miner (Janlyn), Miner's sister, testified in English that on the evening of June 3, 1979, she and Miner were in the parking lot of Diner's Drive-In on Farrington Highway in Waipahu when she saw Defendant at the entrance to the drive-in

---

(b) He intentionally causes another person to commit suicide.

(2) In a prosecution for murder it is a defense, which reduces the offense to manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the view-point of a person in the defendant's situation under the circumstances as he believed them to be.

(3) Manslaughter is a class B felony.

[2] In an order entered on September 7, 1979, the State's motion to *nolle prosequi* the charges against Doria based upon insufficient evidence was granted by the court.

building (hereinafter drive-in) and pointed him out to Miner as the person who had "hassled" their mother a few months earlier. Miner spoke to Defendant and then punched him. Defendant ran off into the parking lot and Janlyn and Miner went into the drive-in. Inside the drive-in, she and Miner ordered some food. She kept watching Defendant and saw him talking to some people in the parking lot.

Shortly thereafter, Pacariem came into the drive-in, and as Pacariem was asking Miner to go outside, Defendant appeared in the drive-in doorway. Miner and the Defendant exchanged words and Defendant approached Miner, yelling at him to go outside. As he approached Miner, Defendant lifted up his shirt revealing a black object in the waistband of his trousers. At that point, thinking that Defendant had a gun, Janlyn got between Defendant and Miner. Miner pushed Janlyn to the floor and when she arose she saw Miner and Defendant, who had a knife in his hand, struggling on the floor. She scuffled with Pacariem to prevent him from helping Defendant. When she turned around, she saw Defendant stab Miner.

Miss Shirley-Ann Wong, who was working as a "counter-girl" at the drive-in on the night of the incident, testified in English that after Miner and Janlyn came into the drive-in, she saw two persons, one of whom she identified as Pacariem, rush in and start fighting with Miner and Janlyn. During the struggle, Miner was stabbed in the head.

Doria testified in English that he also was in the drive-in parking lot at the time of the incident. After being punched, Defendant asked Doria for help and showed Doria a knife that Defendant had under his shirt. Doria declined to help and Defendant went into the drive-in, where Pacariem had preceded him. Doria watched the scuffle and saw Miner fall.

Defendant testified that Miner had punched him in the mouth and that Defendant became "upset" and "angry" and "afraid." Defendant testified that he had taken the knife with him because Miner was bigger than he was, and used it only in "self-defense."

Pacariem testified in Ilocano that he had arrived at the drive-in with Defendant in the latter's automobile and was in the parking lot at the time the incident started. After Miner struck Defendant, Defendant came to the car, took a knife from the area of the

driver's seat, and put it in his trousers under his shirt. Defendant asked Pacariem to help him fight with Miner and Pacariem agreed. While Defendant was talking to three other persons, Pacariem went into the drive-in and then returned to the car. He then followed Defendant into the drive-in where he saw Defendant and Miner struggling as Miner was trying to wrest the knife from Defendant. Pacariem tried to help Defendant and then engaged in a scuffle with Janlyn. As they scuffled, Janlyn screamed and when Pacariem looked in the direction of Miner and Defendant, he saw Miner with a knife embedded in his head.

On two occasions during Pacariem's testimony, Defendant orally moved the court to declare a mistrial because Rulona was not concurrently translating Pacariem's testimony to Defendant in Defendant's Hilongo dialect. These motions were denied. Before the State's rebuttal evidence, Defendant again orally moved for a mistrial on the ground that the interpreter had not "fully" and "effectively" translated all of his testimony for the jury. After a hearing in which the interpreter and Defendant's sister testified, the trial court denied this motion also.

## A.

Defendant contends that the court-appointed interpreter did not "effectively" translate Defendant's testimony while he was on the witness stand, and did not "diligently" translate to Defendant, in Defendant's dialect, the testimony of Doria and Pacariem as they were testifying. As a result, Defendant argues that he was deprived of his federal and state constitutional rights[3] to (1) testify in his own behalf, (2) confront witnesses against him, (3) effective assistance of counsel, and (4) due process of law, and that the trial court should have granted his motions for new trial.

The record indicates that the trial court properly appointed an interpreter to translate the proceedings into Defendant's dialect. Rule 28(b), Hawaii Rules of Penal Procedure (HRPP) (1977, as amended); *cf. State v. Faafiti*, 54 Haw. 637, 513 P.2d 697 (1973) (Failure to appoint an interpreter where necessary would render

---

[3] U.S. Const. amend. V, VI; Haw. Const. art. I, §§ 5, 14.

the trial in defendant's presence meaningless to him and would violate the concept of due process, as defendant would not have his day in court). The question is whether the manner in which the interpreter performed his duties prejudiced Defendant.

B.

Where the incompetence of the interpreter is claimed by a defendant to have deprived him of a fair trial, the crucial question is: Was the testimony as presented through the interpreter understandable, comprehensible, and intelligible, and if not, whether such deficiency resulted in the denial of the defendant's constitutional rights? *People v. Harris,* 104 Ill. App. 3d 833, 433 N.E.2d 343 (1982); *People v. Rivera,* 72 Ill. App. 3d 1027, 390 N.E.2d 1259 (1979). If so, the conviction must be reversed. *Id.*

There is a rebuttable presumption that an interpreter in the course of performing his official duty has acted regularly. *State v. Van Pham,* 234 Kan. 649, 675 P.2d 848 (1984). Although an interpreter may have encountered some difficulties translating the testimony, those difficulties, without more, are not sufficient to rebut the presumption. *People v. DeLarco,* 142 Cal. App. 3d 294, 190 Cal. Rptr. 757 (1983). Courts have recognized that words in one language may not be capable of exact translation into another language, and it is therefore impossible in certain circumstances for an interpreter to convey the precise language of the witness to the court, jury, or defendant. *See United States v. Guerra,* 334 F.2d 138 (2d Cir.), *cert. denied,* 379 U.S. 936, 85 S. Ct. 337, 13 L.Ed.2d 346 (1964); *People v. Jackson,* 53 Cal. 2d 89, 346 P.2d 389 (1959); *Seniuta v. Seniuta,* 31 Ill. App. 3d 408, 334 N.E.2d 261 (1975). Also, the fact that an interpreter employs an irregular technique in answering in the third person and in some instances edits, explains, or interpolates the questions and answers does not automatically give rise to error and immediate reversal. *See People v. Jackson, supra.*

We find the decision in *United States v. Diaz Berrios,* 441 F.2d 1125 (2nd Cir. 1971), to be almost directly on point with the instant case. There, the court noted, in weighing the defendant's attack on his conviction:

> Appellant's principal contention is that he was denied a fair trial because the arrangements made by the trial judge for

interpreting the proceedings were so inadequate that appellant was not informed as to what was going on and hence was unable to defend himself. After examining the trial record, we find this contention to be without substance.

. . . Judge Zampano took particular pains to conduct the trial in such a manner as to make sure that appellant understood everything that was said. When the witnesses spoke in English, the interpreter sat by appellant and translated the proceedings, word for word, into Spanish. . . . On several different occasions the court delayed proceedings in order to afford the interpreter an opportunity to explain something to appellant in Spanish. . . . His testimony shows that he had understood the testimony of the government's witnesses.

*Id.* at 1126-1127.

In the instant case, also, the record does not support Defendant's argument.

The record indicates that the court instructed the interpreter to provide Defendant with a concurrent translation of the proceedings in Defendant's dialect. When in the course of Pacariem's testimony it was called to the court's attention that the interpreter was not doing so, the court recessed the trial to allow defense counsel to confer with the interpreter and Defendant on the testimony given up to that point. Furthermore, when asked by the court to explain why he wasn't rendering a concurrent translation, Rulona stated that he started to do so but Defendant could understand the English testimony.

The record does not support Defendant's contention that because the interpreter was not translating Doria's testimony to Defendant as Doria testified, he was denied the right to cross-examine Doria regarding his testimony that Defendant showed him the knife. Doria testified in English. Defense counsel was aware of his testimony, but chose not to cross-examine Doria on that point. Furthermore, Defendant raised no objection during Doria's testimony that the interpreter was not translating the testimony. Finally, the point is irrelevant, since Defendant himself testified that he already had the knife when he went to speak to Doria.

Also, the record does not indicate that the interpreter's "ineffective" translation of Defendant's testimony was prejudicial to him. The interpreter testified to leaving out of the translation mat-

ters related to Defendant's education and length of residence in Hawaii. We find no prejudice in the omission of those irrelevant matters. While Defendant argues that the interpreter did not adequately translate other parts of his testimony, the record shows that all pertinent matters were, in fact, presented to the jury in English by the interpreter.

### C.

The federal and state constitutional guarantee of due process is not a guarantee of a perfect trial. *State v. Reynolds*, 11 Ariz. App. 532, 466 P.2d 405 (1970). In the instant case, we hold that Defendant was not denied any of his rights by the acts or omissions of the interpreter, and the trial judge, who was in the best position to observe the effects of the matters complained of, did not abuse his discretion in denying Defendant's motions for mistrial. The Defendant and his attorney were furnished the means by which Defendant could be fully apprised with knowledge of the proceedings and the course of the testimony. *Markiewicz v. State*, 109 Neb. 514, 191 N.W. 648 (1922). The testimony of all the witnesses, including Defendant, was understandable, comprehensible, and intelligible, and indicates that Defendant, the witnesses, and the jury understood all the proceedings and the testimony.

### II.

Defendant contends that his court-appointed trial attorney's failure to request a jury instruction on self-defense deprived him of his right to effective assistance of counsel guaranteed by the sixth amendment to the United States Constitution and article I, section 14 of the Hawaii Constitution.

Regarding a claim of ineffective assistance of counsel, our supreme court has stated:

> The standard for determining the adequacy of counsel's representation is whether, viewed as a whole, the assistance provided is "within the range of competence demanded of attorneys in criminal cases." *State v. Kahalewai*, 54 Haw. 28, 30, 501 P.2d 977, 979 (1972), quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *accord, State v. Rivera*, 62 Haw. 120, 612

P.2d 526 (1980); *State v. McNulty,* 60 Haw. 259, 588 P.2d 438 (1978). Counsel's assistance need not be errorless nor will it be judged ineffective solely by hindsight. *State v. Rivera,* 62 Haw. at 129, 612 P.2d at 532-33.

The burden of establishing ineffective assistance of counsel rests upon the appellant. *State v. McNulty,* 60 Haw. at 269, 588 P.2d at 446. His burden is twofold: First, the appellant must establish specific errors or omissions of defense counsel reflecting counsel's lack of skill, judgment or diligence. *State v. Kahalewai,* 54 Haw. at 30, 501 P.2d at 979; *People v. Pope,* 23 Cal.3d 412, 425, 590 P.2d 859, 866 (1979). Second, the appellant must establish that these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. *State v. Kahalewai,* 54 Haw. at 32, 501 P.2d at 980; *People v. Pope,* 23 Cal.3d at 425, 590 P.2d at 866. Where an appellant successfully meets these burdens, he will have proven the denial of assistance "within the range of competence demanded of attorneys in criminal cases."

A finding of ineffective assistance of counsel mandates reversal of a defendant's conviction. In *State v. Okumura,* 58 Haw. 425, 431, 570 P.2d 848, 853 (1977), we held that the violation of an accused's constitutional right warrants a presumption of prejudice. Ordinarily, the prosecution is afforded the opportunity to rebut that presumption by proving harmlessness beyond a reasonable doubt. *Id.; State v. Pokini,* 57 Haw. 26, 29-30, 548 P.2d 1402, 1405 (1976), *cert. denied,* 429 U.S. 963 (1976). The standard for proving ineffective assistance of counsel, however, requires that the appellant establish the substantial impairment or withdrawal of a potential defense. Once that requirement is met, harmlessness beyond a reasonable doubt could never be shown. We therefore conclude that where an appellant establishes the denial of his constitutional right to effective assistance of counsel according to the standard set forth above, his conviction must be reversed. [Footnote omitted.]

*State v. Antone,* 62 Haw. 346, 348, 615 P.2d 101, 104-105 (1980). In assessing a claim of ineffective assistance of counsel, the reviewing court will look at the entire record and a conviction will not be set aside on this ground where there is no factual basis for the claim.

*State v. Rivera,* 62 Haw. 120, 612 P.2d 526 (1980).

Defense counsel's tactical decisions made at trial normally will not be questioned by a reviewing court. *State v. Antone, supra.* Attorneys are permitted broad latitude to make on-the-spot strategic choices in the course of trying a case. *State v. Onishi,* 64 Haw. 62, 636 P.2d 742 (1981). The failure to assert every novel, albeit plausible, legal theory in the defense of an accused does not itself reflect counsel's ignorance of the law. *State v. McNulty,* 60 Haw. 259, 588 P.2d 438 (1978), *cert. denied,* 441 U.S. 961, 99 S. Ct. 2406, 60 L.Ed.2d 1066 (1979). *See also Eli v. State,* 63 Haw. 474, 630 P.2d 113 (1981). However, where trial counsel makes a critical tactical decision which would not be made by a diligent, ordinary, prudent lawyer in criminal cases, the right to effective assistance of counsel may have been denied. *State v. Antone, supra.*

We have examined the record and conclude that Defendant has failed to meet his burden of establishing a denial of effective assistance of counsel. His trial counsel's decision to refrain from requesting a self-defense instruction constituted a legitimate tactical choice. Defense counsel indicated in his opening statement that Defendant would rely on justification as a defense, or on the lesser-included offense of manslaughter. However, as will be discussed below, a review of the testimony presented indicates that there was insufficient evidence to establish a justification defense. In view of that clear deficiency, defense counsel's determination in this case not to request a self-defense instruction and to rely solely upon convincing the jury to consider the lesser-included offense of manslaughter was "within the range of competence demanded of attorneys in criminal cases." *See State v. Antone, supra.* Furthermore, as we will now discuss, the failure to request a self-defense instruction did not cause either the withdrawal or substantial impairment of a potentially meritorious defense.

The use of force in self-protection is governed by HRS § 703-304 (1976), which reads in pertinent part as follows:

*Use of force in self-protection.* (1) Subject to the provisions of this section and of section 703-308, the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.

(2) The use of deadly force is justifiable under this section if the actor believes that deadly force is necessary to protect himself against death, serious bodily injury, kidnapping, rape, or forcible sodomy.

(3) Except as otherwise provided in subsections (4) and (5) of this section, a person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used without retreating, surrendering possession, doing any other act which he has no legal duty to do, or abstaining from any lawful action.

\*   \*   \*   \*

(5) The use of deadly force is not justifiable under this section if:

\*   \*   \*   \*

> (b) The actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take [.]

In wielding his knife, Defendant used "deadly force," which is defined as "force which the actor uses with the intent of causing or which he knows to create a substantial risk of causing death or serious bodily harm." *See* HRS § 703-300(4). Defendant was justified in using deadly force only if he "reasonably" believed it was necessary. HRS § 703-300(1).

The record belies Defendant's attempt to argue justification. First, Miner had completely abandoned his assault on Defendant after the first punch. When Miner entered the drive-in, Defendant was completely free to leave. He could have avoided the use of deadly force with complete safety by retreating. HRS § 703-304(5)(b), *supra. See State v. Napoleon,* 2 Haw. App. 369, 633 P.2d 547 (1981). When Defendant obtained the knife and went to the door of the drive-in, he was then the aggressor. Although in his testimony Defendant attempts to establish a justification for drawing the knife, the record discloses no basis for a reasonable belief that the use of deadly force was necessary. The only possible evidence upon which Defendant could have relied to show self-defense was his own testimony that he got the knife because Miner

was bigger than he was, that Miner pulled him into the drive-in, and he saw Miner taking something black out of Janlyn's bag. No other witness testified to anything even remotely resembling Defendant's testimony. Furthermore, Defendant's testimony was confused and contradictory at best.

Close scrutiny of the record convinces us that Defendant was not deprived of a meritorious defense, since there was no likelihood of success on the self-defense issue. *Compare State v. Rapozo,* 1 Haw. App. 255, 617 P.2d 1235 (1980). Defendant's argument that he was not afforded effective assistance of counsel is without merit. Indeed, the jury's verdict in the light of the evidence is testimony to defense counsel's effectiveness.

## III.

Citing *State v. Warner,* 58 Haw. 492, 573 P.2d 959 (1977), and *State v. Riveira,* 59 Haw. 148, 577 P.2d 793 (1978), Defendant argues that the failure of the trial court *sua sponte* to give an instruction on self-defense was error. However, the facts in *Warner* and *Riveira* are substantially different from those in the instant case. In *Warner* and *Riveira* the trial courts had refused self-defense instructions requested by defendants.

Since Defendant, here, did not request such an instruction and did not object to the court's failure to so instruct, the question is whether it was "plain error" for the court not to have given the instruction argued for by Defendant on appeal. *See* Rule 30(e), Hawaii Rules of Penal Procedure (HRPP) (1977); Rule 52(b), HRPP; *State v. Brezee,* 66 Haw. 162, 657 P.2d 1044 (1983); *State v. Churchill,* 4 Haw. App. 276, 664 P.2d 757 (1983); *State v. Chong,* 3 Haw. App. 246, 648 P.2d 1112 (1982); *State v. Liuafi,* 1 Haw. App. 625, 623 P.2d 1271 (1981).

An appellate court has the power, *sua sponte,* to notice plain errors or defects in the record not properly brought to the attention of the trial judge or raised on appeal but which affect the substantial rights of a defendant. *State v. Iaukea,* 56 Haw. 343, 537 P.2d 724 (1975); *State v. Corpuz,* 3 Haw. App. 206, 646 P.2d 976 (1982).

Neither this court nor our supreme court has specifically defined "plain error." However, cases decided by our courts have

indicated that plain error may be found, on appeal, where (1) there are errors in the jury instructions and (2) it is shown that substantial rights of the defendant may have been affected. *State v. Brezee, supra; State v. Onishi,* 59 Haw. 384, 581 P.2d 763 (1978); *State v. Carson,* 1 Haw. App. 214, 617 P.2d 573 (1980). *Cf. State v. Corpuz, supra.*

In *State v. Brezee, supra,* the defendant contended that the trial court should have instructed the jury that the defendant's conduct should not be considered a substantial step in an attempt to commit rape unless it was strongly corroborative of his criminal intent. Such an instruction, if timely requested, should have been given. However, it was not requested.

The supreme court in *Brezee* stated that, notwithstanding the failure of the defendant to request such an instruction, it possessed the power to consider the alleged error under the "plain error" rule. After discussing the concept of "plain error," the court examined the evidence produced at trial. The court found that the physical evidence pointed to an attempted rape and that there were sufficient inconsistencies within defendant's testimony and between his testimony and that of other witnesses to make his denial of attempted sexual intercourse incredible. The court held that in the light of all the evidence, it was not "plain error" for the trial court *sua sponte* not to give the instruction argued for on appeal.

In the instant case, also, we hold that in the light of the evidence discussed above, it was not "plain error" for the court not to have given *sua sponte* a self-defense instruction because no substantial right of Defendant was affected. As noted above, the evidence, here, clearly did not establish any justification defense, and the failure to give the unrequested instruction did not seriously affect the fairness, integrity, or public reputation of this trial or judicial proceedings in general. *Compare State v. Brezee, supra.*

Affirmed.

*Stephen T. Hioki* for defendant-appellant.

*Shirley Smith,* Deputy Prosecuting Attorney, City and County of Honolulu, (*Constance A. Hassell,* Deputy Prosecuting Attorney, on the brief) for plaintiff-appellee.