## Alexandria

## DANIEL STUBBLEFIELD

v.

## COMMONWEALTH OF VIRGINIA

No. 0440-88-4

Decided May 15, 1990

COUNSEL

Joseph J. McCarthy (Dawkins, Hanagan, McCarthy & Sengel, P.C., on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**DUFF, J.**— Daniel Stubblefield was convicted of robbery in violation of Code § 18.2-58 and the use and display of a firearm in a threatening manner while committing a robbery in violation of Code § 18.2-53.1. In accordance with the jury's recommendation, Stubblefield was sentenced to consecutive terms of ten years on the robbery charge and four years on the firearm charge. The following issues are raised on appeal: (1) whether the defendant was properly convicted of the use of a firearm in the commission of robbery as a second offense; and (2) whether the difficulties involving the Korean interpreter denied the defendant due process. For the reasons stated herein, we affirm the convictions.

I.

At approximately 3:00 p.m. on the afternoon of September 15, 1987, the defendant entered a dry cleaning shop in Alexandria, Virginia, belonging to Ms. Boo Soon Park. After asking about the cost of shoe repairs, the defendant left. Returning a little later, the defendant asked the same questions and again left the shop. At about 6:00 p.m. that evening the defendant returned to the store and robbed Ms. Park at gunpoint, taking the contents of the cash register and a pearl and diamond ring.

The indictment, issued December 7, 1987, against the defendant charged that he "did unlawfully and feloniously use and display a firearm in a threatening manner while committing robbery." The Commonwealth did not contend in the indictment that this was a second offense. The next month, in January of 1988, the defendant was convicted in a different case of, among other things, two counts of using a firearm in the commission of robbery. Subsequent to the January, 1988 conviction the defendant filed a motion for a Bill of Particulars for the September 15, 1987, robbery of Ms. Park. The Commonwealth replied:

*Having been previously convicted of using a firearm during the commission of a robbery,* the defendant entered the victim's business, pointed a gun at her in a threatening manner
. . . .

At trial, the defendant argued that the Commonwealth had not properly notified him of the charges, contending that the language of the Bill of Particulars was not sufficient to constitute notice of a "second offense" prosecution. The trial court rejected defendant's motions concerning lack of notice and, on March 30, 1988, the defendant was convicted of using a firearm in the commission of robbery, as a second offense, and received a four year sentence, as opposed to two years for a first offense.

## II.

The defendant first argues that the Commonwealth, under Code § 19.2-220, is obligated in all instances to inform him of the precise nature of the offense of which he is charged, and that the Commonwealth failed to inform him that he was being charged as a second offender. To support his position, he cites *Kincaid v. Commonwealth,* 200 Va. 341, 105 S.E.2d 846 (1958), and *McKinley v. Commonwealth,* 217 Va. 1, 225 S.E.2d 352 (1976). In *Kincaid,* a case dealing with a reckless driving offense, the Supreme Court stated that:

We have many times held that where an offense is punishable with a higher penalty, because it is a second or subsequent offense of the same kind, the more severe punishment cannot be inflicted unless the indictment charges that it is a

second or subsequent offense. Under rules of criminal pleading the indictment must contain an averment of facts essential to the punishment to be inflicted.

220 Va. at 343, 105 S.E.2d at 848. The more recent case of McKinley reiterates the position taken by the court in *Kincaid*. *See* 217 Va. at 4, 225 S.E.2d at 53-54. At first blush *Kincaid* would seem to control the issue before us. Further examination, however, reveals that the case of *Ansell v. Commonwealth*, 219 Va. 759, 250 S.E.2d 760 (1979), is controlling, and therefore, the defendant's appeal must fail on this issue.

■ Generally, the intent of recidivist statutes is to protect society against habitual offenders. This is done, in part, by impressing upon the offender that a second or subsequent conviction for a felonious offense will carry an increased sentence. These general recidivist statutes are aimed at criminal conduct generally, with reform being one of the primary goals.

■ Code § 18.2-53.1, at issue in this case, is not a general recidivist statute, but a "specific recidivist" statute. Code § 18.2-53.1 imposes additional punishment for a subsequent conviction for the *same* offense. Such statutes are aimed at *punishment* of specific behavior, not reform. "Such statutes may by their language require that the indictment state that the offense charged is a second or subsequent offense. No such requirement, however, is mandated by Code § 18.2-53.1." *Ansell*, 219 Va. at 762, 250 S.E.2d at 762 (citation omitted). In *Ansell*, the defendant was tried on three firearms charges in a single trial. In such a circumstance, the Commonwealth could not allege a subsequent offense in any of the firearms indictments. The Court concluded that, as the purpose of the firearm statute was to deter violent criminal conduct rather than to reform the criminal, a prior conviction was not a necessary precedent to enhanced punishment. *Id.* at 762-63, 250 S.E.2d at 762.

The Commonwealth argues that the Supreme Court implicitly has overruled its decision in *Kincaid* by its opinion in *Ansell*. We are not prepared, however, to base our decision upon what appears to be an implicit overruling of *Kincaid* by the Supreme Court. We look instead to the issues resolved by those cases.

 *Ansell* is the Supreme Court's most recent expression of the law as it pertains to Code § 18.2-53.1. The nature of this statute, as opposed to the statute in *Kincaid,* is the protection of society from blatant, harmful and intentional criminal conduct. The social impact of the crime involved is far greater than that in *Kincaid. Ansell* makes clear that Code § 18.2-53.1 has no requirement of prior notice to the defendant. The legislature and the Supreme Court appear to be in agreement that Code § 18.2-53.1 is designed to punish, not deter, specific, habitual, criminal conduct. Accordingly, we hold that Stubblefield was validly convicted of use of a firearm as a second offense.

## III.

During the trial, a Korean interpreter, appointed by the court, assisted the victim, Ms. Park, with her testimony. The defendant's contention is that the court erred, not in the actual appointment of the interpreter, but in allowing the interpreter to continue once it was apparent that the interpreter was having some difficulty in the verbatim translation of Ms. Park's testimony.

Throughout the trial there were numerous instances of the interpreter having protracted conversations with the witness, often resulting in a brief response to the question. The defendant points to two incidents which, in his opinion, demonstrate the inability of the interpreter to properly translate the victim's testimony. During the cross-examination of the victim the following exchange took place:

Q: How far back does your memory go of everyone that comes into your store?

A: It has been just a year and all my good customers — most of them are regular customers, so I remember them all.

Q: Do you remember me coming into your store to have my shirts laundered?

A: Yes, I can.

Q: I have never been to your store. Where is it?

The Interpreter: Oh, I'm sorry. I told her that, if you come to the store after today, would you remember him, and she said, "Yes."

Counsel then moved for a mistrial. The court denied the motion and posed the question again. Ms. Park testified that she did not recall counsel for the defendant visiting her store.

The second incident occurred later in the trial, the problem arising during the discussion of the firearm and how it was used:

Q: You cannot remember exactly where he pointed it at you?

A: (Ms. Park, speaking English) Yes. I could not remember it, but he point to me his gun.

The Interpreter: I cannot remember where exactly he was pointing at on my body.

Mr. McCarthy: Did I hear you say, "exactly pointing at me," or just "pointing at me?"

This question is directed at the interpreter, your Honor. If it please the Court, did the witness just speak in English?

The Interpreter: Yes.

The defendant renewed his motion for a mistrial, contending that the interpreter's translations were inaccurate and misleading. The trial court again denied the motion.

## IV.

Virginia Code § 19.2-164 states that "[i]n any criminal case in which a non-English-speaking person is the victim, an interpreter shall be appointed by the judge of the court in which the case is to be heard upon the request of the attorney for the Commonwealth and upon a showing of good cause." This Court has previously held that "[t]he conduct of a trial is committed to the sound discretion of the trial court." *Cunningham v. Common-*

*wealth*, 2 Va. App. 358, 365, 344 S.E.2d 389, 393 (1986). As well, the Fourth Circuit has held that the use of an interpreter is a matter committed to the sound discretion of the trial court. *United States v. Rodriguez*, 424 F.2d 205, 206 (4th Cir.), *cert. denied*, 400 U.S. 841 (1970).

■ The trial judge must also determine the veracity of the proceedings before him. The "[c]ompetency [of a witness to testify] is determined by the trial judge based upon all of the circumstances before him and his decision will not be disturbed on appeal absent an abuse of discretion." *Shrader v. Commonwealth*, 2 Va. App. 287, 291, 343 S.E.2d 375, 377-78 (1986). This discretion, we believe, extends to determining whether, in the trial judge's opinion, the interpreter is performing his or her duties satisfactorily.

■ Most cases dealing with the competency of interpreters have dealt with ensuring that the defendant understands the process he is involved in and that he is able properly to respond to accusations and testimony presented against him. *See United States ex rel. Negron v. New York*, 434 F.2d 386 (2d Cir. 1970). A defendant is afforded this degree of understanding so long as the interpreter acts in such a way as to ensure a reasonable degree of accuracy in providing the witness' responses. The trial judge is in a unique position to observe the activities of the parties and the clarity of understanding that is offered by the translated testimony.

■ Words in one language may not have an exact equivalent in another so that, in some instances, it is impossible for an interpreter to translate a witness' answer word for word. The fact that the interpreter "employs an irregular technique in answering in the third person," or "edits, explains, or interpolates the questions and answers," does not automatically create reversible error. *State v. Casipe*, 5 Haw. App. 210, 214, 686 P.2d 28, 33, *cert. denied*, 67 Haw. 868, 744 P.2d 781 (1984); *see also United States v. Guerra*, 334 F.2d 138, 143 (2d Cir.), *cert. denied*, 379 U.S. 936 (1964). For this reason, courts have concluded that an interpreter's version of a witness' answer need not be literal, as long as the answers of the witness and the interpreter "amounted to the same thing." *See also State v. Van Pham*, 234 Kan. 649, ___, 675 P.2d 848, 860 (1984); *Seniuta v. Seniuta*, 31 Ill. App. 3d 408, 417, 334 N.E.2d 261, 268 (1975). The mere fact that the inter-

preter may have had some difficulty in translating the testimony, without more, is insufficient to rebut the presumption that he has acted properly. *Van Pham*, 234 Kan. at ____, 675 P.2d at 860; *Casipe*, 5 Haw. App. at 214, 686 P.2d at 33; *People v. DeLarco*, 142 Cal. App. 3d 294, 307, 190 Cal. Rptr. 757, 765 (1983).

The evidence presented in this appeal indicates that there were some difficulties during the testimony of Ms. Park. The trial judge, in his discretion, did not feel that the difficulties were such that the defendant was denied due process. The constitutional guarantee of due process "is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). This guarantee encompasses both the right of a defendant to confront witnesses against him and the right to assist in his own defense. *See Chambers*, 410 U.S. at 295; *Pointer v. Texas*, 380 U.S. 400 (1965). The Constitution does not, however, guarantee every defendant a perfect trial. The rights vouchsafed are practical, reasonable rights rather than ideal concepts of communication. It is clear in this case that the interpreter translated the testimony of the victim within reasonable limits of accuracy, such that the defendant was granted a fair trial. In this case, due process was satisfied.

Accordingly, the convictions appealed from are

*Affirmed.*

Keenan, J., and Moon, J., concurred.