# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Commonwealth of Virginia

v.

Sare Zektaw

Case No. CF06000240

BY JUDGE LISA B. KEMLER

March 15, 2007

On March 1, 2007, the Court heard argument on the Defendant's "Motion to Translate Verbatim All of the Amharic Testimony at Trial" (Defendant's "Motion") and the Commonwealth's Objection thereto.

The Defendant was tried before a jury on July 17 and 18, 2006, on the charges of rape, attempted sodomy, abduction, and assault and battery. At trial, the Defendant was represented by John Iweanoge. Three of the witnesses, Sara Gebrehana (the complainant), Fasil Alemu, and Yeftusen Tiruneh, called by the Commonwealth spoke the Amharic language and testified with the assistance of a sworn court interpreter, Ms. Bekele. Amharic is a Semitic language dating back to the 14th century and is the official language of Ethiopia. "It is the second most spoken Semitic language in the world, after Arabic." Approximately 20 million people speak Amharic. (http://en.wikipedia.org/wiki/Amharic_language.) The Defendant speaks both Amharic and English. The jury convicted the Defendant of rape, abduction, and assault and battery. Prior to the sentencing hearing, Mr. Iweanoge was permitted to withdraw and the Public Defender was appointed to represent the Defendant. At defense counsel's request, the sentencing hearing was rescheduled and trial transcripts were subsequently filed with the Court.

On January 11, 2007, the Court heard argument on the Defendant's "Motion to Continue Sentencing and Appoint a Neutral Amharic Translator to Translate Verbatim the Amharic Testimony at Trial." (Defendant's "First Motion.") The Defendant sought the re-translation in order to present a motion to set aside the verdict. The basis for the motion was that, during the trial, the Defendant had to alert his counsel to inaccuracies in the court interpreter's translations and that defense counsel would make objections to the translations, but that his counsel's efforts to effectively cross-examine the Commonwealth's witnesses was impaired due to the court interpreter's inaccurate and incomplete translations. At trial, the Defendant objected to the translation on three separate occasions. Each time the Defendant objected, a bench conference was held with all counsel, the defendant, and the court interpreter. The Defendant was given the opportunity to point out the inaccuracy and/or omission, and, on two occasions, the court interpreter agreed that she had, in fact, omitted testimony. In his motion, the Defendant argued that, on the two occasions when the court interpreter admitted the omission, the Court did not instruct the jury that the interpreter had omitted testimony or erred in her translations, but instead, had the question repeated and the full answer translated. Additionally, the Defendant argued that the court interpreter "may have been providing leading questions during direct examination or suggested answers that would have gone entirely unnoticed." (Defendant's First Motion at 2.)

Due to the fact that the Defendant speaks both Amharic and English and he was able to and did make objections on three occasions contesting the accuracy of the court interpreter's translations, the Court granted in part the Defendant's First Motion. The Court appointed a certified Amharic interpreter, Fisher Edward, to translate those portions of the witnesses' testimony to which the Defendant made a contemporaneous objection to the translation. Trial Transcript ("TT") dated July 17, 2006 (TT1) at 117-23, 164-67, and 265-72; TT2 dated July 18, 2006, at 41-46, 49, 61-68, 83-84. Comparing the tapes of the three witnesses' testimony to the trial transcript, Mr. Edward completed his own translation on February 17, 2007, and, on March 1, 2007, counsel again argued the merits of a complete re-translation. Based on the "known errors that were brought to the court's attention by Defendant himself," the Defendant seeks a complete re-translation of the entirety of the three witnesses' testimony arguing that he intends to file a motion to set aside the verdict and request a new trial on the grounds that he was "denied Due Process and his right to remain silent" and "denied his right to confront the witnesses against him . . . when incomplete and confusing testimony was directed to the jury and defense counsel was

unable to effectively cross-examine the Commonwealth's witnesses due to the failure of the sworn translator to accurately and completely translate the testimony. . . ." (Defendant's Motion at 1-2.) The Commonwealth objects to any further translation arguing that the re-translation by Mr. Edward demonstrates that the "trial translation [] was performed within 'reasonable limits of accuracy'." (Commonwealth's Objection filed on February 28, 2007, at 1, citing *Stubblefield v. Commonwealth*, 10 Va. App. 343, 392 S.E.2d 197 (1990)).

Following the March 1st hearing, the Court took the matter under advisement in order to do its own comparison of the trial transcript with the Edward re-translation to determine whether inaccurate or omitted translation justified a complete re-translation. In conducting its own comparison, the Court prepared an index. As a result of this comparison, two observations are evident. First, on three occasions, the Defendant very ably alerted his counsel and the Court when he believed the court interpreter's translation of the witnesses' testimony was not accurate and, on each such occasion, the Court confronted the interpreter, and, on the two occasions when she agreed that she had omitted testimony, the witness's testimony was corrected in accordance with the Defendant's objection in front of the jury. As to the other objection, the court interpreter disagreed with the Defendant's objection and stated that she had translated the testimony verbatim. (TT1 at 164-67.) No argument was made nor is there any evidence that the Defendant sat silently by and failed to advise his counsel of other claimed inaccuracies or omissions, and there is no justification for doing so if he did. Defense counsel did not speak or understand the Amharic language and had to rely on the Defendant to alert him to any claimed inaccuracies or omissions so that counsel could make timely objections.

Second, the balance of the Edward re-translation does not reveal any significant differences from the trial translation. While there may be a word difference or different phraseology, the gist of the original trial translation is very similar if not the same to the Edward re-translation. For example, "Did you see any injuries on her person on the night of the beauty contest?" (TT2 at 43, ln. 7-8) and "Did you see any bruise on her on that day?" (Edward Re-translation.) On the whole, it does not appear that the court interpreter was asking leading questions during the direct examination or suggested answers that would have gone unnoticed as suggested by the Defendant.

Finally, the defendant points to one other omission in the trial translation reflected in Mr. Edward's re-translation. It is as follows. TT1 at 117, ln. 8-10, Sara Gebrehana: "A: I was crying, and after that, he put down

the sharpener and *took me to the living room*." Edward Re-translation: "A: After that *I was begging him* while I was crying, and after that he put it down, and *he said 'come' and dragging me* he took me to the living room."

Current defense counsel argued at the hearing that the portion of the witness's testimony that was omitted ("he said 'come' and dragging me") may have provided a basis to impeach the witness with the fact that in none of her prior statements or testimony did she say that the Defendant dragged her to the living room. This omission was not brought to the Court's attention at trial presumably because the in-court translator's version was more favorable to the Defendant than the witness's testimony (according to the second interpreter).

In light of the fact that the Defendant, a native Amharic speaker, was in a position to understand the Amharic translation at trial and demonstrated that he was capable of voicing objections to any inaccuracies, it would not, in the Court's opinion, be appropriate to authorize funds post-trial to conduct a complete re-translation in order for the Defendant to determine what, if any, other alleged inaccuracies or omissions may exist that could have been brought to the Court's attention at the time of trial. The purpose of the contemporaneous objection rule is to give the Court the opportunity to correct errors on the spot during the trial. A defendant who understands the translated language is not entitled to sit quietly by during the allegedly inaccurate or incomplete translation and demand a second opinion after the trial is over. Were the Court to grant the Defendant's request here, whenever a translator was involved in a trial, a defendant would, upon a showing of minor disparities, be entitled to a second translation and a fishing expedition to comb the record for variances between the two translations. By law, a defendant is entitled to a translation within reasonable limits of accuracy.

As pointed out by the *Stubblefield* Court:

> Words in one language may not have an exact equivalent in another so that, in some instances, it is impossible for an interpreter to translate a witness's answer word for word. The fact that the interpreter employs an irregular technique in answering in the third person, or edits, explains, or interpolates the question and answers, does not automatically create reversible error. For this reason, courts have concluded that an interpreter's version of a witness's answer need not be literal, as long as the answers of the witness and the interpreter amounted to the same thing.

*Stubblefield,* 10 Va. App. at 350.

The Court is persuaded that the Defendant received such a translation in this case.

Thus, based on the foregoing, the Defendant's motion for a complete re-translation is denied and counsel are directed to set the case for sentencing on a mutually convenient date.

## May 3, 2007

Before the Court is the Defendant's motion to set aside the jury's verdict convicting the defendant of rape and to grant a new trial on the grounds that Jury Instruction No. 20 defining "intimidation" did not accurately state the law and that the Court should have given Virginia Model Jury Instruction No. 48.675. The model jury instruction reads as follows:

> Intimidation means putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will.

Jury Instruction No. 20 given to the jury reads as follows:

> Intimidation means putting a victim in fear of bodily harm by exercising such control of her as to overcome her mind and overbear her will.

In as much as the words "domination" and "control" are synonymous with one another and the fact that Instruction No. 20 required the jury to find that the control exercised over the victim overcame her mind and overbore her will, the Court is of the opinion that Instruction No. 20 accurately stated the law.

Based on the foregoing, the defendant's motion to set aside the verdict on the rape charge is denied.