COURT OF APPEALS OF VIRGINIA


Present:    Judges Petty, Alston and Senior Judge Coleman
Argued at Alexandria, Virginia


PATRICIA (TRICIA) KELLY THARP
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0088-11-4                      JUDGE WILLIAM G. PETTY
                                                       OCTOBER 11, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FREDERICK COUNTY
John R. Prosser, Judge

J. David Black for appellant.

Rosemary V. Bourne, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Patricia Kelly Tharp was convicted in a jury trial of conspiracy to commit robbery and

robbery.  She now assigns error to the trial court's decision not to provide one of the

Commonwealth's witnesses with a translator during the witness' testimony.  The witness was

both Tharp's boyfriend and the victim of the robbery in this case.  Tharp alleges that the witness

did "not sufficiently understand English" and that the witness spoke "imperfect English."  She

argues that this decision (1) violated her due process rights under the Fourteenth Amendment to

the United States Constitution and (2) failed to adhere to Code § 19.2-164.  For the following

reasons, we disagree and affirm Tharp's convictions.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite below only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

this appeal. "On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

We first address Tharp's contention that the trial court's decision violated her due process rights under the Fourteenth Amendment. Because she failed to raise this argument below, we do not reach the merits of the argument on appeal. Under Rule 5A:18[1]: "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ." "'Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it.'" Dickerson v. Commonwealth, 58 Va. App. 351, 356, 709 S.E.2d 717, 719 (2011) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 750, 607 S.E.2d 738, 742, adopted upon reh'g banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)). At no time did Tharp ever make this constitutional argument below, either during the witness' testimony or in her post-trial "motion to strike."[2] Therefore, she has waived this argument on appeal.

---

[1] Effective July 1, 2010, Rule 5A:18 was revised to state that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." Because the relevant proceedings below were completed prior to this revision taking effect, we will rely on the language of Rule 5A:18 that was then in effect. See Fails v. Va. State Bar, 265 Va. 3, 5 n.1, 574 S.E.2d 530, 531 n.1 (2003) (applying the Rule of Court in effect at the time of the proceedings below).

[2] Tharp admitted at oral argument that she never raised a constitutional challenge to the trial court's decision in the proceedings below. Although Rule 5A:18 permits us to reach an issue that was not presented below for "good cause shown" or as the "ends of justice" require, Tharp has not raised either exception before us. We do not apply these exceptions *sua sponte*, and thus we do not evaluate whether they are applicable here. See Montgomery v. Commonwealth, 56 Va. App. 695, 705, 696 S.E.2d 261, 265 (2010).

We next address Tharp's argument that the trial court should have provided a translator for the witness during his testimony in compliance with Code § 19.2-164.[3]

Code § 19.2-164 states in relevant part: "In any criminal case in which a non-English-speaking person is a victim or witness, an interpreter shall be appointed by the judge of the court in which the case is to be heard unless the court finds that the person does not require the services of a court-appointed interpreter." "[T]he use of an interpreter is a matter committed to the sound discretion of the trial court." Stubblefield v. Commonwealth, 10 Va. App. 343, 350, 392 S.E.2d 197, 200 (1990).

The trial court did not abuse its discretion here. The witness clearly understood what was asked of him, and although the witness may have spoken with some minor imperfections, those imperfections did not establish that he was a "non-English-speaking person" as set forth in Code § 19.2-164. The witness understood and accurately answered questions concerning letters the witness received from Tharp while she was in jail, the robbery committed against him, and his

---

[3] Although Tharp did not specifically mention Code § 19.2-164 to the trial court, her request to the court to provide the witness with a translator sufficiently encapsulated the provisions of Code § 19.2-164. Therefore, Tharp has not waived this argument based on Rule 5A:18.

However, she has waived a related argument. Tharp also argues that the trial court should have questioned the witness to test his English proficiency before deciding whether to provide him with an interpreter for his testimony. Like her due process argument, Tharp never brought this issue to the attention of the trial court. Instead, she merely asserted at the start of the witness' testimony that the court should provide the witness an interpreter because the witness had asked for one. Rule 5A:18 requires an appellant to make a specific and timely objection "'so that the trial judge [knows] the particular point being made in time to do something about it.'" Dickerson, 58 Va. App. at 356, 709 S.E.2d at 719 (quoting Thomas, 44 Va. App. at 750, 607 S.E.2d at 742). Thus, to comply with Rule 5A:18, it was incumbent upon Tharp to specifically request the court to question the witness in this manner. Tharp cannot now allege that the trial court erred when it did not do something that Tharp never requested it to do.

relationship with Tharp, all in very specific detail.[4]  He answered a long series of specific questions appropriately, with "Yes, sir," "No, sir," or more elaborate answers that clearly demonstrated that he spoke and understood English.  For instance, when asked by the defense how Tharp reacted "to the two gunmen in the house invasion," the witness replied,

> She started crying for the kids, you know, and I told her, you know, to calm down.  Then she tried to run upstairs and, you know, and follow them, but I told her, "Look, stop.  They have got a gun, you know.  They are going to try to do something to you."

When asked further whether Tharp's child, Tyler, was "hurt in this home invasion," the witness replied:

> Yeah, Mr. Wilson [one of the robbers] pushed him in the back because Tyler was trying to tell him, you know, get off my dad. And that is when Wilson pushed the little boy on the back and I told him, "Look, Jamie [the robber's first name], I am going to give you whatever you want . . . ."

Moreover, on redirect, the following exchange occurred after the Commonwealth asked why the witness "didn't want to report the robbery":

> A.  Because, you know, I know that I was, you know, selling drugs, you know, and I am scared of the police, you know, to come to my house and, you know, trying to search my house, you know.
>
> Q.  So you didn't want the police to come to your house because you were selling drugs there.
>
> A.  Yeah.  But at the time I didn't have no drugs in my house, you know.  I am just scared of them, you know.
>
> Q.  So, when you went to report this to the police . . .
>
> A.  Right.
>
> Q.  . . . were you able to identify the people who did it?

---

[4] Indeed, the witness provided testimony necessary to authenticate lengthy letters Tharp wrote to him *in English*.

A. At the robbery when he told me, "Give me your money," and I recognized the voice. And I told Jamie, "Don't do nothing to the kids. I will give you whatever you want."

Q. Is there any reason why you didn't tell the police it was Jamie?

A. I did. I told the police it was Jamie.

Q. You told them that night?

A. Yes, sir. When we went to the police office we told the lady, you know, I told who it was.

Q. So you weren't afraid of him. You were afraid of the police.

A. Yes, sir.

The record is replete with many other examples of the witness' ability to understand and speak English proficiently.

Tharp focuses on a small number of statements by the witness in an attempt to show that the witness was not an "English-speaking person" under Code § 19.2-164. We do not agree that these statements demonstrate that the witness could not speak and understand English.

Tharp first notes that when asked his name, the witness replied, "Gonzales Jose." The mere fact that the witness decided to give his last name first does not demonstrate an insufficient understanding of English. Spanish conforms to the same first-name/family-name ordering convention as English, so how this ordering demonstrates that the witness could not speak proficient English is unclear to us. Tharp has certainly not explained why it would. In fact, when asked what his first name was, the witness replied, "Jose," so he clearly understood the question posed to him and responded appropriately.

Tharp also notes that the witness said, "My lawyer, Mr. Downes, came to see me in the Orange County Jail," although Mr. Downes was not, in fact, the witness' lawyer. The witness then went on to say, in explaining what happened to the letters he gave to Mr. Downes, "My lawyer took from me. He told me that he was supposed to read it and give it back to me. But I

don't know. I don't know that. He tried to get this, you know." These statements also fail to demonstrate that the witness did not understand or speak English. Instead, they merely demonstrate that the witness did not understand that Mr. Downes actually represented Tharp. It is plain that the statements otherwise demonstrate the witness' English proficiency. Code § 19.2-164 does not require the court to provide a translator to a witness if the witness lacks excellent English skills, or if the witness is not a native English speaker. Rather, Code § 19.2-164 requires the court to provide a translator to a witness *only* if the witness is a "non-English-speaking person," which was not demonstrated here.[5]

During Tharp's post-trial motion, the trial court explained its reasoning for withholding a translator from the witness:

> It appeared to me as though [the witness] understood exactly what was going on and it would have been an unnecessary delay and I had the impression he might have been seeking that because it was his girlfriend and she was in a tough spot and maybe he thought there would be some benefit to stretching it out and having the jury trial not occur. I don't think there was anything that happened with regard to his testimony that betrayed any lack of understanding as to what was going on or what he was saying or what was being asked of him.

Thus, when asked by the witness and the defense to provide the witness with a translator, the trial court reasonably concluded at that time that the witness seemed to understand what was said and that the witness wanted a translator simply to delay the trial for the apparent benefit of his girlfriend. Indeed, the trial court made an express factual finding in a post-trial written order that the witness "appeared to have a good understanding of the questions put to him, was able to

---

[5] We also find the fact that the witness may have received a translator as a defendant in an unrelated federal trial irrelevant to the question before us in this appeal. Without knowing why the witness received an interpreter in that circumstance, that fact does not necessarily tend to prove that the witness is a "non-English-speaking person" within the meaning of Code § 19.2-164.

provide clear and unambiguous answers, and seemed to have very little difficulty communicating with either the Court or counsel."

The trial court reasonably concluded that there was no indication that the witness did not understand or speak English at the outset of the witness' testimony. Further, the trial court reasonably decided that it would revisit the issue if a language barrier arose. A language barrier never arose. Accordingly, the trial court did not abuse its discretion when it chose not to provide the witness with a translator.

Thus, for the foregoing reasons, we affirm Tharp's convictions.

<u>Affirmed.</u>